**SHELTON v. UNITED STATES.**

No. 9515.

United States Court of Appeals
District of Columbia.

Argued Nov. 17, 1947.

Decided Dec. 22, 1947.

Mr. Jay Paul Shelton, appellant, pro se.

Mr. John D. Lane, Assistant United States Attorney, of Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, and Mr. John P. Burke, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Mr. John H. Burnett, of Washington, D. C., appointed by this court as amicus curiae, urged reversal.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant was indicted, tried by a jury, convicted, and sentenced to serve one to three years, for perjury.[1] The prosecution was in the name of the United States by the United States Attorney, and the trial was by the District Court of the United States for the District of Columbia. The indictment was in two counts. The facts alleged were that the defendant had secured from the Department of Vehicles and Traffic of the District of Columbia a certificate of title for a Chevrolet automobile; that later he surrendered the original certificate as burned and mutilated and secured a duplicate certificate; that still later he filed, on a form furnished by the Director of Vehicles and Traffic, an application for a second duplicate certificate of title; that this application was under oath; that the defendant answered "Lost" to the requirement on the application that he "State reason for requiring duplicate"; and that defendant entered "No" on the line requiring information as to "Existing liens, chattel mortgages, unpaid balances, etc." The first count of the indictment was that the first of these two statements was false, and known by defendant to have been false, because the first duplicate certificate had not been lost. The second count of the indictment was that the second of these two statements was false, and known by defendant to have been false, because there were liens, chattel mortgages, and unpaid bills existing on the automobile. Both counts, as we have said, were for perjury.

The defendant moved to merge the two counts. At first the United States Attorney agreed to the merger, saying that the various matters charged might be considered alternate ways of committing one offense. But when the case was called for trial, he withdrew his consent, suggesting that different questions of law might arise as to the two alleged false statements, and saying that he wanted a verdict on each statement, because he foresaw that if there were one verdict of guilty, this court upon appeal could not tell which statement the jury had found to be false. Nevertheless, the counts were merged, and upon the trial there was one verdict of "guilty in manner and form as charged in the indictment", and one sentence of one to three years.

Appellant-defendant's first point is that the offenses described in the indictment did not constitute the crime of perjury but at most were misdemeanors to be prosecuted by the Corporation Counsel in the Municipal Court for the District of Columbia.

Three statutes are involved. The pertinent words[2] of the District of Columbia perjury statute are:

"Every person who, having taken an oath, in any case in which the law authorized such oath, that any written declaration by him subscribed is true, wilfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years."[3]

---

[1] Act of March 3, 1901, 31 Stat. 1329, D.C.Code, tit. 22, § 2501 (1940).

[2] We quote only the pertinent parts of these statutes, and to lessen confusion in reading, omitted words have not been indicated in any of the quotations

[3] Supra note 1. The minimum sentence of two years is translated by the Indeterminate Sentence Law into one to three years.

Four subsections under Section 6 [4] of the District of Columbia Traffic Act [5] are pertinent. Subsection (c) provides: "The Commissioners of the District of Columbia are authorized to make reasonable regulations in respect to titling, retitling, [etc., of] motor vehicles." Subsection (d) provides:

"The commissioners shall not register any motor vehicle unless and until the owner thereof shall make application in the form prescribed by the commissioners, under oath, and be granted an official certificate of title for such vehicle. Any individual violating any provision of this subsection or any regulations promulgated thereunder shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Subsection (e) provides: "The commissioners may in the administration of any provision of the Traffic Acts, exercise any power or perform any duty conferred on them by the Traffic Acts through such officers and agents of the District as the commissioners may designate." Subsection (i) provides: "All prosecutions for violations of provisions of the Traffic Acts, excepting section 11 thereof, or regulations made and promulgated under the authority of said Acts shall be in the police court of the District of Columbia upon information filed by the corporation counsel of the District of Columbia or any of his assistants."

The third pertinent statute is the Act of July 2, 1940, known as the Motor Vehicle Lien Law,[6] Section 6 of which provides: "Applications for certificates, in addition to all other matters which may be required by law, shall show under oath whether or not there are any liens against the motor vehicle". Section 14 of the same Act provides:

"Any person intentionally making a false statement with respect to liens in an application for a certificate, or willfully violating any of the provisions of this Act, shall upon conviction be punished by a fine of not more than $500 or be imprisoned for not more than one year, or both. Prosecutions for violations of this Act shall be by the corporation counsel of the District of Columbia or any of his assistants, in the name of the District of Columbia."

If an application for a duplicate certificate is an application for a certificate, within the meaning of the last-quoted section of the Lien Act, there is no escape from the conclusion that in so far as the defendant's false statement as to liens is concerned, the maximum sentence was a fine of $500 and imprisonment for one year, and the prosecution was required to be by the Corporation Counsel in the name of the District of Columbia.

The Lien Act, generally throughout its provisions, speaks only of a "certificate", which it defines as a certificate of title, but in at least two places it specifically mentions a duplicate; in Section 6 appears "an application for a certificate * * *, or on the application for a duplicate", and in Section 11 appears "where the certificate * * * has been lost or destroyed and a duplicate certificate issued". This circumstance gives rise to some question whether a "certificate" and a "duplicate certificate" were deemed by Congress to be two different things, and whether "duplicate certificate" was used whenever a duplicate was meant. But careful reading of the whole Act shows that it cannot be construed that way. Only the word "certificate" appears in the provisions as to unentered liens (Section 2), the entry of liens on certificates (Section 7), the delivery of certificates (Section 6), the assignment of liens (Section 8), the surrender of certificates for liens (Section 9), the possession of the certificate (Section 10), and the recordation of satisfied liens (Section 11). But obviously those provisions must necessarily apply to duplicates as well as to original certificates. The purpose of the Act is a current one, the recording, releasing, etc., of liens being a current, changing matter, and not merely an initial static one. This purpose obviously applies to duplicates as it

---

[4] 46 Stat. 1424 (1931), D.C.Code, tit. 40, § 603 (1940).

[5] Act of March 3, 1925, as amended, D.C.Code, tit. 40, §§ 601—617 (1940).

[6] 54 Stat. 736, D.C.Code, tit. 40, §§ 701—715 (1940).

does to originals. It would be ridiculous to conclude that these elaborate provisions apply so long as the original certificate is preserved but not thereafter when a duplicate is the outstanding authentic evidence of title. We think that the above-quoted provisions of Sections 6 and 14 of the Lien Act apply to applications for duplicate certificates just as do the provisions of all the other sections of the Act.

■ The foregoing being true, the next question is whether the defendant's false oath as to liens may be prosecuted and punished under the general perjury statute. It is clearly within the statutory definition of perjury in that statute, quoted above. But there can be no question about the general rule that, absent extraordinary results of such construction, a specific later statute, rather than an earlier general one, applies to a given transaction described by both acts,[7] i. e., generally by the earlier act and specifically by the later.

■ There is no room in the present problem for the application of the rule of the Noveck case,[8] urged upon us here. In that decision, as in a line of cases before and since, it was held that the making of a false oath and the using of it in an attempt to defeat an income tax are two separate offenses. Hence, under those two statutes, when a person both makes a false oath and then uses it in an attempt to defeat the income tax, he may be indicted, convicted, and punished for either or both of the two offenses. It is argued that under that rule, when the present defendant made the false oath he violated the perjury statute and not the Lien Law. But the local statute in respect to false statements as to liens specifically applies to the making of the false statement. The making is the offense, and the making is required to be under oath. Thus, the prescriptions in Section 14 necessarily apply to the making of false statements under oath. Congress certainly did not require that applications be under oath and at the same time provide severe penalties for making false applications not under oath.

The offense thus described in the Lien Act is a particular kind of perjury.[9] Congress has provided a specific penalty, and a specific prosecutor, for the sort of perjury which consists of a false oath as to liens on an application for a certificate of title on a motor vehicle; and has designated that offense as one against the District of Columbia. The courts cannot ignore those provisions.

There appears nothing extraordinary about the results of the application of this rule of construction to the present case. Throughout the Traffic and Lien Acts is a clear intent on the part of Congress to place proceedings for violations of those acts in the hands of the Corporation Counsel for prosecution in the Municipal Court,[10] and to subject violators to punishment within the jurisdiction of that court. In the Moyer case,[11] we said:

"We think it is too plain for argument that by the amendatory section Congress intended that all prosecutions for violations of the traffic act, except for the violation of the smoke screen provision contained in section 11, should be at the instance of the corporation counsel and in the name of the District of Columbia. Unless it means this it means nothing."

We, therefore, conclude that the making of a false statement as to liens, under oath, upon an application for a certificate or a duplicate certificate of title for a motor vehicle in the District of Columbia, must be prosecuted by the Corporation Counsel in the name of the District of Columbia. Count 2 of the indictment, being in the name of the United States and signed by the United States Attorney, should have been dismissed for that reason.

[7] MacEvoy Co. v. United States, 1944, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163.

[8] United States v. Noveck, 1927, 273 U.S. 202, 47 S.Ct. 341, 71 L.Ed. 610; see also United States v. Gilliland, 1941, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598.

[9] Epstein v. United States, 7 Cir., 1912, 196 F. 354; Schmidt v. United States, 9 Cir., 1904, 133 F. 257; United States v. Dupont, D.C.Or.1910, 176 F. 823; Hammer v. United States, 2 Cir., 1925, 6 F. 2d 786, reversed on other grounds, 1926, 271 U.S. 620, 625, 46 S.Ct. 603, 70 L.Ed. 1118.

[10] District of Columbia v. Moyer, 1937, 68 App.D.C. 98, 93 F.2d 527.

[11] Id., 68 App.D.C. at page 99, 93 F.2d at page 528.

■■ We are constrained to point out that even if the indictment itself had been good, the judgment would have to be reversed, because, in view of the merger of the two counts, we cannot tell upon which false statement the jury rested the general verdict. If only upon the statement as to liens, the verdict would not support the sentence of one to three years. Punishment upon conviction for that offense is a fine of not more than $500 or imprisonment for not more than one year, or both. The United States Attorney accurately foresaw this difficulty at the beginning of the trial. The Government now says that the defendant invited the error in the merger. It refers to Rule 12 (b) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. But a defendant, even by invitation, cannot confer jurisdiction upon the court to impose a sentence greater than the statute permits. Rule 12 (b) (2) is plain in that respect.

The view we take on the phase of the case just discussed makes necessary a reversal of the judgment of the District Court. Since, however, the controversy as to the other count may affect the course of further proceedings, if any be contemplated in the matter, we consider and decide that problem.

Appellant-defendant says that an oath to his statement that the first duplicate certificate was lost was not "authorized by law", a requisite of the crime of perjury under the statutory definition.

■ The Traffic Act itself does not require an oath on an application for a duplicate; in fact, it does not mention duplicates. Its only reference to an oath is that "The commissioners shall not register any motor vehicle unless and until the owner thereof shall make application in the form prescribed by the commissioners, under oath, and be granted an official certificate of title for such vehicle." The oath thus required relates to the registration of the car. That application contains vital information for the recording of titles. A duplicate certificate is not a registration. Once a car is registered, it remains registered until its ownership changes. So far as the Traffic Act and registration are concerned, a duplicate cerificate is merely the reissue of a document, copied from the Director's records. The applicant need not even identify the car if he knows the number of the original certificate so that the Director can locate the information in his files. The requirements of the statute for registration do not apply, either in terms or in principle, to duplicate certificates. So the oath required for the registration of a car cannot be said to be an oath required for the issuance of a duplicate certificate.

The Commissioners had power to make regulations. Whether or not they, therefore, had power to require an oath,[12] they did not do so. They treated the subject of duplicate certificates in some detail,[13] but they did not mention an oath.

---

[12] United States v. Bailey, 1835, 9 Pet. 238, 9 L.Ed. 113; Caha v. United States, 1894, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415; United States v. Smull, 1915, 236 U.S. 405, 35 S.Ct. 349, 59 L.Ed. 641; United States v. Morehead, 1917, 243 U. S. 607, 37 S.Ct. 458, 61 L.Ed. 926.

[13] Vehicle Title and Registration Regulations for the District of Columbia, effective January 7, 1943, § 9:

"(a) Whenever a certificate is lost, stolen, destroyed, or illegally detained from the owner, or the director decides the face or back of the certificate has been altered, erased or mutilated by a person other than the director or recorder, or a certificate cannot be officially altered, the owner shall make application for a duplicate certificate on a form furnished by the director. Such application shall contain reasons for requiring a duplicate certificate and lien information, if any. If such application is not accompanied by such certificate and there are no recorded liens against the vehicle described on such certificate, such application must contain an executed statement from such lien holders or other evidence satisfactory to the director that they do not hold such certificate. Any such application which contains information relating to liens which have not been recorded or released by the recorder shall be accompanied by the instruments or any other papers necessary to entitle such liens to be entered or released on such duplicate certificate.

"(b) Every application for a duplicate shall be executed and accompanied by the fees for such duplicate certificate and the recording thereon of such lien information, if any, and shall be delivered to the director by the owner or his agent."

■ The Commissioners authorized the Director to prescribe a form. They gave him no other authority. They did not attempt to delegate to him any power to make regulations. It has been settled for many years that an official without power to make regulations cannot require an oath so as to bring it within the scope of the perjury statute.[14] We do not have to decide whether the Commissioners might have delegated to the Director the power to make regulations [15] or the power to prescribe an oath. The general power of delegation as to "administration", conferred on them by Section 6(e) of the Traffic Act does not seem to be broad enough to convey so serious a power as that to require an oath covered by the perjury statute. Certainly the power of delegation conferred by the statute did not encompass all their duties.[16] However, it is sufficient for the present case that they did not purport to delegate that power to the Director.

■ The Government says that the two false statements were one offense, because there was only one oath. Upon that basis it is argued that the offense was complete when one false statement was made, and that the other statement was superfluous. There is both logic and authority for that view in regard to perjury committed by several false statements under one oath, but there is also authority holding that each separate false statement upon a different matter, although all under one oath, is a separate crime.[17] We need not, and do not, consider that general proposition here, because, as we have pointed out, Congress has carved out of the general perjury statute the crime of making a false statement as to liens on an application for a certificate of title to a motor vehicle, and has prescribed for that crime a specific punishment. Two offenses can, of course, be committed by one act. So, if the defendant made two false statements, one violating the general perjury statute and the other violating the specific statute as to liens, he committed two offenses, even though he took but one oath; just as a person commits two offenses if he kills one person and wounds another with the same shot. The contention that the two false statements constituted but one offense is confronted by the practical question: If defendant committed only one offense, which offense did he commit, the one punishable by not more than one year's imprisonment, or the one punishable by not less than two years' imprisonment? The impossibility of an answer to that question demonstrates that in this case, even if both false statements were covered by the one oath, two offenses were committed.

■ The one remaining possible basis for holding this oath "authorized by law" is that, by requiring the reason for the application to be stated on the application, which already had an oath on it because of the lien information it contained, the Commissioners automatically placed this additional information under an oath. The first difficulty with this contention is the doctrine that an administrative officer cannot add to the content of an oath prescribed by statute so as to make falsification of the additional information perjury.[18] But in the case at bar there is another, and equally conclusive, difficulty with the contention. If the Commissioners had wanted to put the additional information under an oath, they could easily have said so. They did not say so, and we are asked to imply that they nevertheless intended it. The realities of this implication, and not the mere verbal exercise, are important. Violation of the oath already on the application as to liens was, as we have seen, punishable by not more than one year's imprisonment. We are asked to imply a change in its

[14] United States v. George, 1913, 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712; Viereck v. United States, 1943, 318 U.S. 236, 241–243, 63 S.Ct. 561, 87 L.Ed. 734.

[15] Cf. Fleming v. Mohawk Wrecking & Lumber Co., 1947, 331 U.S. 111, 67 S.Ct. 1129, and Cudahy Packing Co. v. Holland, 1942, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895.

[16] See Cudahy Packing Co. v. Holland, supra, note 15, 315 U.S. at page 363, 62 S.Ct. 651, 86 L.Ed. 895.

[17] Cases collected at 124 Am.St.Rep. 676; see also Seymour v. United States, 8 Cir., 1935, 77 F.2d 577, 581, 99 A.L.R. 880.

[18] Patterson v. United States, 9 Cir., 1910, 181 F. 970, 973, and cases there cited; United States v. Robertson, D.C. S.D.Cal.1919, 257 F. 195.

scope so great as to make its violation punishable by not less than two years' imprisonment. Moreover, although of less consequence, we are asked to imply that the Commissioners meant to place this particular matter wholly beyond the clear intent of Congress as to violations of the traffic laws, described in the Moyer case, supra. The implication would create a striking incongruity, in that, if made, it would make a false oath as to a relatively minor bit of information punishable by a drastic and rigid provision, whereas a false oath as to the really vital information on the application, that relating to liens, is punishable by a much less and more elastic sentence.

We cannot make that implication. It is not incumbent upon the courts to write regulations. The Commissioners' failure to prescribe an oath to this additional information is clear. Their action is consistent with the general plan and intent of the statute. We have no reason to disagree with it, even if we had power to do so.

It follows that we are of opinion that an oath to the portion of the application for the duplicate certificate requiring a statement of the reason for the application was not "authorized by law" within the meaning of the perjury statute.

Appellant-defendant asserts that several other prejudicial errors were committed during the course of the trial. However, we need not consider them, since we are of opinion that the indictment should have been dismissed. Count 1 of the indictment should have been quashed, upon completion of the evidence, because the oath therein referred to was not authorized by law and, therefore, the offense described did not constitute the crime of perjury. The vice of Count 2 of the indictment was that the offense committed was not against the peace and government of the United States but was one specifically required by statute to be prosecuted by the Corporation Counsel in the name of the District of Columbia. The judgment of the District Court must, therefore, be reversed and the case remanded to that court with instructions to dismiss the indictment.

Reversed and remanded.