**Allen A. TIMUS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 14050.

District of Columbia Court of Appeals.

Argued June 21, 1979.

Decided Aug. 13, 1979.

---

* *See* Rule 6(c) of the General Rules of this Court.

William J. Mertens, Public Defender Service, Washington, D. C., for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D. C., also was on the reply brief for appellant.

E. Anne McKinsey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., when the brief was filed and at the time of oral argument, and John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of carrying a pistol without a license, D.C. Code 1973, § 22–3204; possession of an unregistered firearm, D.C. Code 1978 Supp., §§ 6–1811, –1876; and possession of ammunition for an unregistered firearm, id., §§ 6–1861, –1876. We affirm the first conviction, but set aside the other two.

I

While on patrol at about 5:45 one evening, Metropolitan Police Officers Brown and Kennedy saw a Volkswagen with temporary tags parked in the 1300 block of T Street, N.W. The car aroused Brown's suspicion because he believed that the model year of the car did not properly correspond to the serial number on the tag.[1] Approximately 30 to 45 minutes later, the officers again observed the Volkswagen, this time being driven north on 14th Street by appellant. The officers followed the car to Park Road, where appellant drove straight through the intersection in a lane marked for a left turn only. In response to that traffic violation, the officers stopped appellant's car.

■ As they did so, Officer Brown noticed appellant moving within the car as if he were attempting to conceal something. Additionally, when Brown approached appellant's vehicle after it was stopped, he saw a police-type nightstick on the front seat between appellant and a passenger. Fearing that there might be additional weapons inside, Brown ordered the occupants out of the car. They were patted down, and the frisk revealed that appellant was carrying several rounds of .38 caliber ammunition. A search of the car then turned up a .38 caliber revolver in a pocket on the driver's side door. Appellant admitted the pistol was his, but he explained to the officers that he was carrying it because he was a special police officer coming home from work. Appellant nevertheless was arrested. As noted, after a bench trial, he was found guilty of carrying a pistol without a license, possession of an unregistered firearm, and possession of ammunition for an unregistered firearm.[2]

II

Appellant was issued the pistol in question by the District of Columbia government for use in connection with his duties as a special police officer. Appellant, however, did not have a license for the weapon. Therefore, he was subject to the proscriptions of D.C. Code 1973, § 22–3204,[3] unless he was exempted therefrom under D.C. Code 1973, § 22–3205, which provides that "policemen or other duly appointed law-en-

---

1. Officer Kennedy also testified that the tag was "hanging insecure."

2. Prior to trial, the court denied appellant's motion to suppress the pistol and ammunition. We affirm that ruling. Unlike the factual situations in the cases relied on by appellant, there is no meaningful evidence in the record that the stop of appellant's car for the traffic violation was a sham—i. e., that it provided a pretext to search the car. Indeed, there was ample evidence to the contrary. Thus, we could not validly say that the court's ruling was plainly wrong or without evidence to support it. See D.C. Code 1973, § 17–305(a). See generally United States v. Edmons, 432 F.2d 577 (2d Cir. 1970); Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir. 1968); Montana v. Tomich, 332 F.2d 987 (9th Cir. 1964); United States v. Harris, 321 F.2d 739 (6th Cir. 1963); Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961); McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977 (1950); Worthington v. United States, 166 F.2d 557 (6th Cir. 1948); Sam v. State, 500 P.2d 291 (Okl.Cr.1972). Similarly, the officer's search of the car was permissible. See, e. g., United States v. Thomas, D.C.App., 314 A.2d 464 (1974).

3. Section 22–3204 provides in pertinent part:
   No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed.

forcement officers" do not need a license to carry a pistol.[4]

▮ A special police officer such as appellant, who has been commissioned pursuant to D.C. Code 1973, § 4–115, will be considered a policeman or law enforcement officer within the meaning of § 22–3205 only to the extent that he acts in conformance with the regulations governing special officers.[5] *See Franklin v. United States,* 148 U.S.App.D.C. 39, 458 F.2d 861 (1972), *aff'g,* D.C.App., 271 A.2d 784 (1970); *McKenzie v. United States,* D.C.Mun.App., 158 A.2d 912 (1960). The regulation pertaining to a special officer's right to carry firearms provides:

> Firearms or other dangerous weapons carried by a special policeman on the premises designated on his commission must be left on said premises when such special policeman is not actually on duty, unless no adequate provisions for storage can be made as certified by the Chief of Police and noted on the commission. Firearms or other dangerous weapons carried by special policemen whose commissions extend to more than one person's or corporation's property, or more than one premises owned by one person or corporation, may be carried only when such special policeman is on actual duty in the area thereof or while traveling, without deviation, immediately before and immediately after the period of actual duty, between such area and the residence of such special policeman. [Manual of the Metropolitan Police Department, ch. XI, § 11.8 (1972).]

At the time of his arrest, appellant was not on duty or in the area of the property to which he was assigned;[6] therefore he would be permitted to carry his pistol without a license only, as provided by the quoted regulation, if he were "traveling, without deviation, immediately . . . after [his] period of actual duty, between such area and [his] residence." *See Franklin v. United States, supra,* at 40–41, 458 F.2d at 862–63; *McKenzie v. United States, supra.*

Appellant's supervisor testified that according to his records, appellant had worked from 8:00 a. m. to 4:00 p. m. on the day on which he was arrested. The testimony of the police officers indicated that appellant first was observed in the area of 13th and T Streets at 5:45 p. m.; he was stopped and found with the pistol some 30 to 45 minutes after that—a total of roughly two and one-half hours after the end of his shift. Taking this testimony into account, and noting further that appellant was arrested on a Saturday when he would not encounter rush-hour traffic, the trial judge concluded that appellant could not be considered to have been traveling home "immediately" after his time of duty. We affirm that finding. We conclude, as did the trial judge, that at the time he was arrested appellant was not a "policeman or other law-enforcement officer" exempt from the provisions of § 22–3204. Accordingly, he properly was convicted of carrying a pistol without a license. *See Franklin v. United States, supra; McKenzie v. United States, supra. Cf. Middleton v. United States,* D.C. App., 305 A.2d 259 (1973); *Singleton v. United States,* D.C.App., 225 A.2d 315 (1967).

---

**4.** Section 22–3205 provides in pertinent part:
The provisions of section 22–3204 shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, [Air Force,] or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty . . . . .
The "when on duty" portion of this section has been held to apply only to the recited military organizations. *See United States v. Pritchett,* 152 U.S.App.D.C. 307, 470 F.2d 455 (1972).

**5.** D.C. Code 1973, § 4–115, provides:

The Commissioner of the District of Columbia, on application of any corporation or individual, or in his own discretion, may appoint special policemen for duty in connection with the property of, or under the charge of, such corporation or individual; said special policemen to be paid wholly by the corporation or person on whose account their appointments are made, and to be subject to such general regulations as the District of Columbia Council may prescribe.

**6.** Appellant was assigned to duty at 433 Ninth Street, N.E. There was no place at that location for him to store his weapon or ammunition.

## III

■ The trial judge also found appellant guilty of possessing an unregistered firearm in violation of D.C. Code 1978 Supp., § 6–1811. That section provides in pertinent part:

(a) Except as otherwise provided in this chapter, no person or organization shall within the District receive, possess, [or] have under his control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization shall, within the District possess or have under his or its control any firearm, unless such person or organization is the holder of a valid registration certificate for such firearm. In the case of an organization, a registration certificate shall be issued (1) only to an organization which has in its employ one or more commissioned special police officers or other employees licensed to carry firearms, and which arms such employees with firearms during such employees [*sic*] duty hours and (2) only to such organization in its own name and in the name of its president or the chief executive.

(b) Subsection (a) shall not apply to—

(1) Any law enforcement officer or agent of the District or the United States, or any law enforcement officer or agent of the government of any State or subdivision thereof, or any member of the Armed Forces of the United States, the National Guard or Organized Reserves, *when* such officer, agent, or member is authorized to possess such a firearm or device while on duty in the performance of official authorized functions. [Emphasis added.]

The trial judge's ruling on this issue turned on her belief that in order for appellant to be exempt under subsection (b)(1) of § 6–1811 from the registration requirement of subsection (a), he had to have been carrying the gun while on duty in the performance of his functions as a special police officer. Concluding that appellant was not on duty, the judge ruled that he was not exempt from registration.

Appellant asserts, and the government agrees, that the trial court misinterpreted subsection (b)(1). Specifically, appellant maintains that the word "when" (italicized above for recognition) in subsection (b)(1) is the semantic equivalent of the word "if," and does not imply that the authority of the named personnel to possess an unregistered firearm exists only during their time on duty. We agree with this interpretation.

The predecessor to § 6–1811(b)(1) was D.C.Pol.Reg. Art. 51. Section 10(c) of that article provided an exception from registration for

any officer, agent or employee of the District of Columbia or the Federal Government, or any officer, agent or employee of the government of any state or subdivision thereof, or any member of the Armed Forces of the United States, the National Guard or the Organized Reserves, *when* such officer, agent, employee or member is authorized to carry a pistol, rifle or shotgun and who is carrying a pistol, rifle or shotgun while on duty in the performance of his official authorized functions. [Emphasis added.]

The word "when" in that section is synonymous with the word "if." It is also evident that § 10(c) was the prototype of the current § 6–1811(b)(1). Significantly, aside from definitional alterations, the only substantive change made to § 10(c) was the elimination of the phrase "and who is carrying a pistol  . . . ." The effects of that deletion are twofold. First, it gives us the present statutory phraseology by allowing for the combination of the clause "when such officer, agent  . . . or member is authorized to [possess such firearm or device]" with the clause "while on duty in the performance of his official authorized functions." A logical corollary to this usage is that these words retain their original meaning; thus, the word "when" in § 6–1811(b)(1) retains its synonymity with "if." Second, the phrase "and who is carrying a pistol  . . ." in § 10(c), in context, seemingly limited the right of law enforcement or similar personnel to possess an unregistered firearm to those times when

he or she was on authorized duty. The omission of those words from § 6–1811(b)(1) indicates that the City Council intended for people who are authorized to possess firearms while on duty to be exempt from registration while off duty.

We need not rely exclusively on a comparison of past and present registration provisions to arrive at that conclusion, however. Fundamental practical considerations lead to the same result. Foremost among these is that any other interpretation of subsection (b)(1) would lead to serious inconsistencies within § 6–1811 itself. That is, if a special police officer such as appellant were exempt from the registration requirement only while on duty, then, to avoid running afoul of the requirement at other times he would have to have a registration certificate for the weapon he was issued. Under subsection (a), however, appellant could not have obtained such a registration, for the registration certificate was held by his employer, the District of Columbia. Indeed, under § 6–1811(a)(2), the registration certificate could only have been issued to the District. Appellant thus could not have registered the pistol had he wanted to. It could hardly have been the intent of the legislature to impose liability on one for the failure to do something which it prohibits him from doing.

Similarly, as noted above, § 11.8 of Chapter XI of the police manual requires a special officer to take his gun home when there are no storage facilities for it at his place of work. Yet, unless subsection (b)(1) provided an exception to registration, by following § 11.8—as he must—a special police officer inevitably would be in constant violation of § 6–1811(a). Again, we cannot believe that the legislature intended such a result.

We thus conclude that under D.C. Code 1978 Supp., § 6–1811(b)(1), any law enforcement officer or agent of the District of Columbia or the United States, any law enforcement officer or agent of the government of any state or subdivision thereof, and any member of the Armed Forces of the United States, the National Guard or Organized Reserves is exempt at all times from having to have a registration for the firearm (or device) he is issued, if he is authorized to possess that firearm or device on duty.[7] Therefore, appellant's conviction for possession of an unregistered firearm must be vacated.

## IV

■ Our concern for appellant's being in a no-win situation also requires that his conviction for possession of the ammunition for the unregistered firearm be vacated. Section 11.8 of Chapter XI of the police manual, which requires a special police officer to carry his firearm home immediately after his shift if he cannot leave it at work, of necessity implicitly requires that he also take home the ammunition for that firearm. Once again, however, by following this provision the officer ostensibly runs afoul of another—D.C. Code 1978 Supp., § 6–1861— which provides:

No person shall possess ammunition in the District of Columbia unless:

(a) He is a licensed dealer pursuant to subchapter IV.

(b) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition.

(c) He is the holder of the valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses.

(d) He holds an ammunition collector's certificate on September 24, 1976.

Appellant does not clearly fall within any of the specified exceptions, but when one considers § 6–1861 in conjunction with the registration section, § 6–1811, it is reasonable to conclude that he effectively comes within the ambit of the exception contemplated by § 6–1861(c).

---

7. This holding deals only with the registration requirement of § 6–1811, and does not affect potential culpability under § 22–3204 of the Code.

In passing the Firearms Control Regulations Act of 1975—of which the above sections are a part—the City Council acknowledged that possession of some firearms by citizens is legitimate, but its overriding concern was to limit and control such possession. *See* D.C. Code 1978 Supp., § 6–1801. Thus, the Council sanctioned the ownership of certain limited types of firearms subject to strict registration and transfer provisions. The Council further recognized that if a person is entitled under the various provisions of the Firearms Control Regulations Act to possess a weapon, he also is entitled to have ammunition for the weapon. Ordinarily this entitlement is tied to registration—*i. e.*, under § 6–1861(c) a person may possess ammunition of the gauge or caliber matching the firearm registered in his name. However, as discussed earlier, under § 6–1811(a) special police officers and others who are issued firearms by their employers cannot register their weapons. They nevertheless are entitled to carry them and ammunition for them.

The entitlement to carry a service weapon is contained in § 6–1811(b)(1), while that for ammunition for it is found to an extent in § 6–1861(b), which allows authorized law enforcement personnel to carry ammunition while on duty. However, there is a significant gap in the ammunition statute for people in the position of appellant who cannot register their service firearms but who must, because of other requirements, possess their weapons and ammunition therefor while off duty. Despite the otherwise lawful nature of their actions, under the literal wording of § 6–1861, they still might be liable for possession of ammunition.

To fill this void, and thus to eliminate the intolerable effect of subjecting a person to prosecution under one law for following another, we conclude that when a person (1) is issued a firearm by an employer which holds a registration certificate for that firearm under § 6–1811(a), and (2) is required by law or regulation to possess the issued firearm while off duty, the registration held by the employer will be imputed to the employee for the purposes of § 6–1861(c). Put more simply, a person in such a situation will be deemed under § 6–1861(c) effectively to hold a valid registration for his service firearm.

In this case, appellant (1) was issued his service revolver by the District, which held the registration certificate for it, and (2) was required to possess the pistol while off duty. Thus, appellant would be allowed to carry ammunition for his revolver under § 6–1861(c); therefore, his conviction for illegal possession of ammunition also must be vacated.

*Affirmed in part and reversed in part.*