**Larry Jerome CHAPMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 83–836.

District of Columbia Court of Appeals.

Argued Jan. 30, 1985.

Decided June 13, 1985.

Cheryl D. Stein, Washington, D.C., appointed by this court, for appellant.

Roscoe C. Howard, Jr., Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, MACK, Associate Judge, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Appellant was charged by a three count information with carrying a pistol without a license, D.C.Code § 22–3204 (1981), possessing a pistol without a valid registration, *id.* § 6–2311(a), and possessing ammunition without registration, *id.* § 6–1861(c). A jury found appellant guilty as charged after which the court imposed concurrent sentences of a $300 fine or thirty days' imprisonment on each count. This appeal followed.

Appellant's contentions are in substance that (1) the two weapons counts of the information were duplicitous with the result that he was deprived of his right to a unanimous verdict as required by Super.Ct. Crim.R. 31(a); (2) that the court erred in its instructions to the jury; (3) that the prosecutor's closing argument was improper; and (4) that he was denied the effective assistance of trial counsel.

### I.

The charges arose out of an altercation on May 6, 1981, in an alley at the rear of 103 57th Place, N.E. Involved were Janice Wilson, Larry J. Chapman, the appellant, and one Marcus Pugh, later identified as appellant's brother. It appears that about 6:30 p.m. on that date, Janice Wilson complained to her mother, Mrs. Frances Schingler, of the 103 57th Place address that a man had slapped her and she identified Marcus Pugh as that man. Appellant came upon the scene at that time and allegedly began "screaming, hollering" and "cursing" at her. Appellant was also alleged to have drawn a gun from his back pocket.

Mrs. Schingler then retreated to her home and called the police. Upon their arrival, Mrs. Schingler identified appellant who was seated in a car parked in the alley. Appellant was ordered from the car, and looking inside, one of the officers observed protruding from the driver's seat the butt of a Smith & Wesson .38 caliber revolver with six bullets in its chamber. Another officer observed a green coat in the back of the automobile and investigation disclosed a second .38 caliber pistol containing five bullets. Appellant was arrested and the charges followed.

After his arrest, appellant identified himself as a special police officer and the Smith & Wesson pistol in the front seat area as his service revolver.

### II.

Appellant first argues that his conviction must be reversed because the information was duplicitous. More specifically, he contends that duplicity arose when he was charged with only one count each of carrying a pistol without a license and possession of an unregistered firearm even though there had been two guns involved. He urges that as a result he could have suffered a nonunanimous verdict as to one or both counts, since it cannot be determined "which gun" the jury unanimously found him to have possessed without a license and failed to register. Despite his trial counsel's failure to object on duplicity grounds, appellant argues that his conviction should be reversed because the error was "so manifest." He says that the error was compounded by the fact that he offered separate defenses regarding each gun with the possibility that the jury would split or be unable to agree as to which defense should be believed.

■ That the information is not duplicitous is clear in view of this court's decision in *Cormier v. United States*, 137 A.2d 212 (D.C.1957). In *Cormier*, the appellant was charged in two informations with carrying two pistols without licenses on a single occasion, and a jury found him guilty of each charge. This court reversed the second judgment of conviction holding that only one offense had been committed. We noted then that nothing in the statute, D.C. Code § 22–3204 (1951), disclosed a congressional intention that there be multiple prosecutions on facts such as were before the court. The same can be said here for the 1981 recodification of § 22–3204, and D.C. Code § 6–2311(a) (1981), upon which the convictions for carrying and possessing unregistered firearms were based. Hence, the information was not duplicitous.

■ Nor do we agree with appellant that the jury verdict could have been non-unanimous. Considering the instructions in their entirety, it is clear that the jury was told twice to consider each gun separately in its deliberations, *viz.*, whether the prosecution proved each element of the offenses beyond a reasonable doubt. We have no reason to believe that the jury did not follow the trial judge's instructions and conclude that they found appellant guilty as to each gun.[1]

Appellant next contends that the trial judge improperly instructed the jury that it could find appellant guilty of failing to register a firearm and illegal possession of ammunition issued to him by the District pursuant to his commission as a special police officer. Stated another way, appellant assigns as error the trial judge's failure to instruct the jury that under *Timus*

*v. United States*, 406 A.2d 1269, 1274 (D.C. 1979), he could not be found guilty of failing to register his service revolver (the Smith & Wesson) or of possession of ammunition for that gun. We agree. In *Timus*, we said:

[U]nder D.C.Code 1978 Supp., § 6–1811(b)(1),[2] any law enforcement officer or agent of the District of Columbia ... is exempt at all times from having to have a registration for the firearm (or device) he is issued, if he is authorized to possess that firearm or device on duty.

*Id.* at 1274 (footnote omitted). We went on to likewise exempt, under § 6–1861(c),[3] one who is issued a firearm by his employer, if he is required to possess the firearm while off duty, and if the employer holds a registration certificate for it. *Id.* at 1275.

■ Appellant argues again that it is impossible to know whether the jury found him guilty of possessing one or the other of the two guns insisting that he was severely prejudiced by the erroneous instruction. The government concedes, as it must, that appellant had an absolute defense under *Timus* to the possession of the unregistered Smith & Wesson firearm and the ammunition charge regarding that revolver. It contends, however, that there is no need to vacate the convictions for possession of an unregistered firearm and the ammunition for it. We cannot agree, however, since there conceivably could be collateral consequences flowing from such convictions.[4]

■ Appellant next challenges two instances of alleged prosecutorial misconduct—that the prosecutor argued his personal opinion, facts not in evidence, and that he made a missing witness argument

---

1. We note that appellant did not object to these instructions at trial. Reviewing for plain error, *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc), we are satisfied that these instructions were adequate under that standard.

2. Recodified at D.C.Code § 6–2311(b)(1) (1981).

3. Recodified at D.C.Code § 6–2361(c) (1981).

4. Appellant's contention that the judge erred in instructing the jury that appellant had the bur-

den of bringing himself within D.C.Code § 22–3205 (1981), the exception to the carrying a pistol without a license charge, *id.* § 22–3204, is meritless. *Williams v. United States*, 237 A.2d 539, 541 (D.C.1968). Section 22–3205 creates an exception, not an additional element of the offense. The burden is therefore upon the defendant to prove that he qualified for the exception. *Id.*

without court approval. Defense counsel did not object to any of the arguments. In this posture, the test for reversible error is "whether the prosecutor's comments amounted to 'plain error'; that is, whether they were so clearly prejudicial to substantial rights of appellant as to jeopardize the very fairness and integrity of the trial." *Arnold v. United States*, 467 A.2d 136, 137–38 (D.C.1983) (citing *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc)); *Logan v. United States*, 489 A.2d 485, 488 (D.C.1985).[5]

Appellant complains that the prosecutor, during the introduction to his closing argument, interjected his personal view that this case was "a difficult case for everybody," citing as one example his own difficulty in asking that a special police officer be convicted since he, as a United States Attorney, "normally relies upon a special police officer ... [to protect him] when a difficult situation develops."[6] Appellant also asserts that, without factual record support, the prosecutor made comments such as while "good" police officers do not like to carry guns, for some people "the gun becomes an object of fascination and not something that you carry for the only

purpose that it's for, the lawful purpose to do your job as a police officer."

The government concedes that most of the comments were "irrelevant" as appellant suggests, but argues that at best they were the "boring irrelevancies," *Dyson v. United States*, 450 A.2d 432, 438 (D.C. 1982) (citing *Harris v. United States*, 131 U.S.App.D.C. 105, 108, 402 F.2d 656, 659 (1968)), first criticized by Chief Justice Burger while a United States Circuit judge. The government also notes that the prosecutor, as well as the judge, advised the jury that counsel's arguments were not evidence, hence, mitigating any prejudice that may have resulted.

■ Whether or not these comments are akin to those in *Dyson* that we found "to be the sort of irrelevant rhetoric that the jury likely had the good sense to disregard," *supra*, 450 A.2d at 438, we conclude that they were not so prejudicial as to amount to plain error. We have often admonished counsel, and now do so again, that they are not to interject their personal opinions into argument because of the weight such comments likely carry with the jury. We have also emphasized that the danger of such opining is heightened when

5. Appellant, citing *Simmons v. United States*, 444 A.2d 962, 965 (D.C.1982), asserts that we must review the prosecutor's remarks for harmless error under *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). In *Simmons*, which treated the propriety of the missing witness instruction given rather than prosecutorial commentary, contrary to appellant's reading, defense counsel did object to the missing witness instruction given, *supra*, 444 A.2d at 963, therefore warranting the harmless error standard of review.

6. The full text of the prosecutor's "difficult case" argument is as follows:

There is probably going to be a closing argument you hear at some point during your tenure as jurors that says, "This is a simple case." That will not be today's case. This is a difficult case. It's a difficult case for everybody.

It's difficult because it involves a set of facts concerning not only weapons, but a man who was licensed, or commissioned by the District of Columbia to enforce its laws. It makes it a difficult case for the prosecution's office because we work with special police officers all

the time. It makes it difficult for the police officers themselves; they work with the special police officers.

It made it difficult, I'm sure, for the sergeant who testified yesterday because he is also a District of Columbia special police officer, commissioned and working with the defendant.

It made it difficult, I think, for the two civilians who testified, because they are neighbors of the defendant's grandmother. They live right around the corner, as you heard.

So everyone had to come into court and do something that was very difficult; and that is, to tell a story, to provide evidence against another person, and it was difficult, as I say, for myself, as an Assistant United States Attorney, who normally relies upon a special police officer. They are my backup; the person who protects me when a difficult situation develops, and here I am, and these witnesses are, and we are here to ask you to find this special police officer guilty of a crime. That's very difficult.

the remarks concern credibility, when credibility is so crucial to the determination of guilt, *Logan, supra,* 489 A.2d at 490; *see Powell v. United States,* 455 A.2d 405, 408 (D.C.1982). Appellant's and his brother's credibility was an important factor in this case. But neither the prosecutor's remarks on the difficulty of the case nor those on the "good" versus "bad" police officers can fairly be characterized as comments on witness veracity. We find no reversible error.

■ Appellant urges as a second example of prosecutorial misconduct that the prosecutor, without obtaining the court's permission, argued in closing that there were unaccountably missing defense witnesses. Appellant had testified that he had been called to work that day but did not work because he arrived late, supporting his defense that he had his service revolver legitimately with him as he was traveling from his place of work to his home. His brother testified that he had just purchased the Charter Arms revolver and placed it in appellant's car without his knowledge, thereby supporting appellant's assertion that he did not know that the revolver was in his car. In response to this testimony, the prosecutor stated in closing:

> There are conflicts in the testimony. Those are conflicts you will have to resolve. Did [appellant's brother] have a car or did he not? Was [appellant] scheduled for work that day or was he not? [Appellant] said there was a person who called him up and said, "Come to work," but when he came late there was no work for him.
>
> He did not call him as a witness. [Appellant's brother] said, I have this gun which I bought on May 6. He did not call that person as a witness. He had the availability of calling that person as a witness. There were many people who could have been called as witness[es]. They were not called.

The government concedes that these arguments were improper but denies that they are a basis for reversal since the prosecutor never "argued that [the witnesses] would have presented adverse testimony had they appeared."

We find that no misconduct occurred. As we recently said in *Logan, supra:*

> Generally, counsel may not invite the jury to draw an adverse inference from a party's failure to produce a witness without first seeking permission from the court. *Parks v. United States,* 451 A.2d 591, 614 (D.C.1982), *cert. denied,* 461 U.S. 945 [103 S.Ct. 2123, 77 L.Ed.2d 1303] (1983); *see Simmons v. United States,* 444 A.2d 962, 963–64 (D.C.1982); *Dent v. United States,* 404 A.2d 165, 169–71 (D.C.1979). However, no misconduct occurs when, as here, the prosecutor comments on a witness' absence but does not " 'directly urge the jury to draw from the fact [of absence] an inference adverse to appellant.' " *Parks,* 451 A.2d at 614 (citation omitted).

*Logan, supra,* 489 A.2d at 490; *see Fleming v. United States,* 310 A.2d 214, 220–21 (D.C.1973).

■ Appellant lastly argues that under the constitutional standard set forth in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), he was denied his Sixth Amendment right to the effective assistance of counsel. He alleges ineffectiveness through the "sum total" of his counsel's failure to object to (1) the duplicity of the information; (2) the trial judge's improper shifting of the burden of persuasion to the defense on whether appellant came within the D.C.Code § 22–3205 (1981) exception; (3) the prosecutor's improper closing; and (4) the misstatement of the law under *Timus, supra.*

We recently stated that to prevail under *Strickland, supra,* appellant must make two showings. First, "that counsel's performance was deficient, *i.e.,* unreasonable under the prevailing norms...." *Hill v. United States,* 489 A.2d 1078, 1079 (D.C. 1985). Second, that he was so prejudiced as to have been deprived of " 'a fair trial, a trial whose result is reliable.' " *Id.* (quoting *Strickland, supra,* 104 S.Ct. at 2064).

We cautioned that under *Strickland* our scrutiny was to be highly deferential, with as a backdrop " 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* at 1080 (quoting *Strickland, supra,* 104 S.Ct. at 2065–66).

We have already found no error in either appellant's duplicity or burden of persuasion assignments of error. Hence, appellant fails in the first two instances of alleged ineffectiveness of counsel to make the required showing of deficient performance. We are left then to scrutinize only counsel's failure to object to certain remarks of the prosecutor during closing.[7]

■■ As to the prosecutor's missing witness comments, we note, first, that we have determined that the argument was not improper and, second, that appellant's trial counsel, while not objecting to them, did respond during his closing to the remarks. He countered as to the absence of the lieutenant who purportedly called appellant to work that day, with:

> If the prosecutor wanted to prove he wasn't scheduled to work that day, he could have brought [the lieutenant who was a D.C. government employee] down here. That witness just doesn't belong to the defendant. Anybody could have brought that witness down here. .

In an indirect manner, he also countered the prosecutor's observation that the man who allegedly sold Pugh the gun did not testify. He pointed out that Pugh should especially be believed because of the risk he took by testifying. After informing the jury that the prosecution brought a police officer into court when Pugh took the stand, defense counsel stated:

> It's not only a question of brotherly love. He got up on the stand and candidly told the truth, knowing that he also could be

charged with possession of a gun and unregistered ammo. So it's not just a question of brotherly love, a man getting up and saying anything he wants to say to help his brother. There could be dire consequences to that.

■■ We do not consider these attempts by defense counsel to respond to the prosecutor's arguments to be unreasonable under the prevailing norms. Assuming *arguendo* that trial counsel was deficient in his failure to object to the prosecutor's remarks about the difficulty of the case and about "good" police officers and their guns, we do not find the type of prejudice amounting to ineffectiveness under *Strickland,* nor has appellant demonstrated any prejudice.

We affirm the judgments of convictions with the exception of the judgment of conviction for possessing a pistol without a valid registration and possessing ammunition without a valid registration as they pertain to the Smith & Wesson service revolver. We remand with directions to vacate the registration convictions insofar as they relate to the service revolver.

*Affirmed.*

MACK, Associate Judge, dissenting:

The majority is silent with respect to an entire body of case law from this court finding plain error in circumstances identical to those found in this case. Since in my view this case law mandates reversal here, I must dissent.

Two .38 caliber weapons are involved in this case: a Smith & Wesson service revolver, and a Charter Arms five-shot revolver. The majority admits that even though appellant was charged with a single count of each weapons offense—carrying a pistol without a license and possession of an unregistered firearm [1]—each count in

---

7. Because we remand with directions to vacate the unregistered firearm and ammunition convictions insofar as they relate to the Smith & Wesson service revolver, we need not consider counsel's failure to request a *Timus* instruction.

1. The information charged Chapman with a single count of "carrying pistol without a license," a single count of "fail to register firearm," and a single count of "ammunition violations." The government contends that our decision in *Cormier v. United States,* 137 A.2d 212 (D.C.1957),

effect charged him with unlawfully carrying or possessing *both* pistols. The government introduced evidence of possession of both guns in support of each charge, and the trial court instructed the jury on the different elements of each offense as they applied to each gun and on appellant's separate defenses applicable to the separate charges as to each gun. We have held that when "each count contain[s] a charge with respect to two guns," the trial court *must* give the jury a special verdict form to determine whether, as to *each charge,* appellant "unlawfully carried or possessed one or the other gun, or both." A special verdict form is necessary in these circumstances in order "to assure a conviction only if there was a unanimous verdict as to a particular gun." *Logan v. United States,* 489 A.2d 485, 491 & n. 6 (D.C.1985). The general verdict returned by the jury in this case encompasses within it the possibility that half the jury found appellant guilty of carrying the Smith & Wesson revolver without a license and without registration, and the other half found appellant guilty of possessing the Charter Arms pistol without a license and without registration.

Even prior to *Logan,* we have held repeatedly that where one count encompasses more than one incident—here, more than one gun—the trial court has a duty to instruct the jurors not only that their verdict must be unanimous as to that count, but that it must be unanimous *as to each incident. Davis v. United States,* 448 A.2d 242, 243 (D.C.1982); *Hack v. United States,* 445 A.2d 634, 641 (D.C.1982); *Hawkins v. United States,* 434 A.2d 446, 449 (D.C.1981); *Johnson v. United States,* 398

A.2d 354, 369–70 (D.C.1979); *Shelton v. United States,* 83 U.S.App.D.C. 32, 36, 165 F.2d 241, 245 (1947). The majority makes much of the fact that the trial court instructed the jury that its verdict must be "unanimous." It overlooks the fact that the court told the jury that its verdict had to be unanimous only as to each *count,* not as to each gun. The court said, "There are three offenses charged, and with respect to each of them you have to reach a verdict of guilty or not guilty. And each of those verdicts must be unanimous." Of course, although there were three *counts* in the information, since there were two guns involved in each count the instruction did nothing to insure against a nonunanimous verdict.

The court did tell the jury that two guns were involved in the case. Its instruction on this score, however, was hopelessly confused:

> In connection with those offense[s], you must bear in mind that there are two guns, and that there is evidence relating individually to each gun. So far as the service revolver, of course, the regulations, the law, the regulations regarding special police officer relate to those, to that service revolver. And, of course, if you find that under the evidence that the defendant fit into the [special police officer] exception . . ., if you find that exception is applicable in this case, of course then *he wouldn't have the right to have his service revolver.* Of course, there would be—the offense of unregistered gun and unregistered ammunition wouldn't be applicable as to that gun if you make that finding. But those regulations are applicable to the service re-

would require it to charge appellant with a single count of carrying a pistol without a license even if 100 pistols had been recovered from his car. Without addressing the merits of this contention, I note that the government does not feel itself similarly restricted in cases of failure to register a firearm; *see, e.g., Anderson v. United States,* No. 83–1124 (D.C. Mar. 29, 1985) (unpublished) (appellant charged with and convicted of two counts of possession of an unregistered firearm based on the discovery of two un-

registered pistols in his coat). The information here includes only one count of failure to register, mentioning only a single "pistol," despite the fact that (1) the government intended to prove that appellant here had illegally failed to register *both* pistols found in his car, and (2) no legal impediment existed to clearly charging appellant with failing to register both guns. The "failure to register" count is therefore clearly duplicitous.

volver and not the other weapon in the case. [Emphasis added.]

Not only does this instruction not inform the jury that its verdict as to each gun must be unanimous, it erroneously tells the jury (assuming the accuracy of the transcript) to find appellant guilty as charged even if it credits his defense, and finds that he was acting at the time of the offense as a special police officer.

The majority finds no plain error under the circumstances of this case, again overlooking the fact that the possibility of a conviction based on less than a unanimous jury vote implicates the Sixth Amendment and therefore affects substantial rights. We have repeatedly found plain error in identical or similar circumstances. *Davis,* 448 A.2d at 244; *Hawkins,* 434 A.2d at 449; *Johnson,* 398 A.2d at 369–70.

Ironically, the majority vacates the "convictions for possession of an unregistered firearm [the Smith & Wesson service revolver] and the ammunition for it," *ante* at 1029, even though there is no way to be

sure that a unanimous jury actually found appellant guilty of these charges. The vacation of these convictions in any event does not eliminate the possibility of a nonunanimous jury verdict as to (1) carrying the Smith & Wesson revolver without a license, (2) carrying the Charter Arms revolver without a license, (3) possession of an unregistered Charter Arms revolver, (4) possession of ammunition for the Charter Arms revolver. The separate defenses asserted by appellant as to each revolver combined with the unclear jury instructions turn a nonunanimous verdict as to at least one of these charges into more than a possibility. Accordingly, I would reverse the convictions and order a new trial.[2]

---

**2.** In view of the disposition I would make, I do not address the issues of prosecutorial miscon-

duct or ineffective assistance of counsel.