UNITED STATES of America,

v.

Rodney COATS, Appellant.

No. 80–1670.

United States Court of Appeals,
District of Columbia Circuit.

Submitted Feb. 13, 1981.

Decided March 16, 1981.

Charles F. C. Ruff, U. S. Atty., John A. Terry, Sylvia Royce and Michael S. Pasano, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

John E. Lappin, Washington, D. C. (appointed by this Court), was on the brief for appellant.

Before WRIGHT, TAMM and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case involves the use made at trial of appellant's prior conviction for a crime of "dishonesty or false statement." When a defendant takes the stand and testifies on his own behalf, such a conviction, introduced on request of the prosecutor, inevitably occasions

> two inferences, one permissible and the other impermissible .... The fact that

the defendant has sinned in the past implies that he is more likely to give false testimony than other witnesses; it also implies that he is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life. The law approves of the former inference but not the latter.

*United States v. Harding*, 525 F.2d 84, 89 (7th Cir. 1975). In the matter before us, appellant's prior conviction was introduced, deliberately, for the permissible purpose, to impeach his credibility. Through the prosecutor's haste in her closing argument, there was also a suggestion that the jury might draw the impermissible inference. Our task is to determine whether the error committed, in the context of the entire record, is appropriately regarded as harmless.

▮ Appellant Rodney Coats was convicted of mail fraud (18 U.S.C. § 1341), false pretenses (D.C.Code § 22–1301), forgery, and uttering (D.C.Code § 22–1401). He presents two questions concerning references at trial to his prior conviction for uttering. First, Coats asserts that it was error to permit use of the uttering conviction for impeachment purposes. Appellant argues that jurors, despite cautionary instructions, will tend to infer guilt from a prior conviction for an offense of the *same* character.[1] Congress, we conclude, has foreclosed our consideration of that argument. Rule 609(a)(2) of the Federal Rules of Evidence, this court has held, authorizes use of a conviction for a crime involving "dishonesty or false statement" to attack the credibility of a witness "regardless of possible prejudice to the defendant." *United States v. Smith*, 551 F.2d 348, 358–59 (D.C.Cir.1976). In view of our holding in *Smith* that Rule 609(a)(2) does not call for any balancing of probative value against

prejudicial effect,[2] appellant's first contention is insubstantial.[3]

The second issue Coats raises presents a more serious problem. It relates to a remark the prosecutor made in her closing argument. The context of that remark was the Government's unsuccessful attempt to show by handwriting analysis that Coats had signed two post office notices of attempted delivery. Coats' thumbprint appears on one of the notices, but no witness testified to seeing that notice in his possession. A post office window clerk testified that she observed Coats signing the other notice. Tr. 136. Coats testified that neither form bore his signature. Tr. 161, 163, 165–66, 168–69. It was stipulated that the notices were submitted for handwriting analysis, and that the examining document analyst would testify that "Rodney Coats could neither be identified, nor eliminated as the writer of [the] signatures." Tr. 122–23.

In the midst of her summation (Tr. 190) the prosecutor said:

> I don't know what [defense counsel] will say. If I were her, I would offer to you this handwritten [sic] stipulation that says that Mr. Coats couldn't be identified as the writer of any of these signatures. Look carefully at that stipulation. The handwriting expert, had she been called to testify, would testify first that she couldn't identify Mr. Coats as the writer on any of these questioned signatures— *not a big surprise, I would submit to you, considering Mr. Coats' prior involvement with cases of this type.* (Emphasis added.)

Defense counsel immediately objected: "Your Honor, she's making reference to the conviction for some other purpose than

---

1. Coats was also impeached by a conviction for receiving stolen property. He does not challenge here reference at trial to that conviction.

2. Rule 609(a)(1) does require such balancing for crimes other than those recognized as involving "dishonesty or false statement." For the argument that Rule 609(a)(2) should not apply automatically in cases in which "the possibility of prejudice is extremely great," *see*

*United States v. Toney*, 615 F.2d 277, 283–84 (5th Cir. 1980) (Tuttle, J., dissenting).

3. Appellant's trial counsel acknowledged that the uttering conviction was admissible to impeach Coats' testimony. Tr. 15–16. His counsel on appeal does not question that uttering is a crime involving "dishonesty or false statement."

impeachment and I would ask for mistrial." Tr. 191. The trial judge denied the mistrial motion stating that he thought "the argument had to do with credibility." *Id.*

Before the court instructed the jury the prosecutor asked to be heard on the matter of instructions. Tr. 202. She expressed concern about her closing argument remark, which appellant's counsel on appeal acknowledges to have been inadvertent. Brief for Appellant at 16. The prosecutor said she "certainly didn't mean to suggest that because Defendant had been guilty of uttering before, he was guilty of uttering again." Tr. 202. The trial judge instructed the jurors in his charge, as he had instructed them just after the cross-examination of Coats, about the limited extent to which they could consider prior convictions. Tr. 171–72, 211.

We are unable to characterize the prosecutor's closing remark as relating solely to credibility, nor can we agree with the Government that the statement was "ambiguous." Brief for Appellee at 13. The remark, although inadvertent, does suggest that the handwriting analyst could not tie the signatures to Coats because Coats was experienced in disguising his hand through "prior involvement with cases of this type." Further, we recognize that even meticulous cautionary instructions are incapable of erasing an error of this genre. As Judge Fahy explained in *United States v. Carter*, 482 F.2d 738, 740–41 (D.C.Cir.1973):

> Even when the prior criminal record is brought into the evidence in an appropriate manner, there is the well-nigh inescapable prejudice on the issue of guilt notwithstanding the trial court carefully instructs the jury as to the limited consideration it may accord the evidence. [Citation omitted.] One never knows. At best it can only be assumed the jury will be able to close its mind to the total import of the evidence and consider it

only as it might affect the credibility of the witness, ignoring its prejudice to the defendant on the issue of guilt of the offense for which he is being tried. When there is the additional prejudice growing out of the introduction of the evidence in an inappropriate manner such as we have here, pointing to present guilt due to the earlier convictions, rather than to present credibility *vel non* of the accused as a witness, the limiting instructions cannot confidently be held to have eliminated the prejudice. It is asking too much of a jury.

We adhered to *Carter* in *United States v. Henry*, 528 F.2d 661 (D.C.Cir.1976), when we again rejected the Government's position that an error of the kind made here could be erased by a cautionary instruction.[4]

*Henry* requires, however, that we proceed to determine whether the evidence is so overwhelming that "we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' *Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969), *quoting Kotteakos v. United States*, 328 U.S. 750, 765, [66 S.Ct. 1239, 1248, 90 L.Ed. 1557] (1946)." *Henry, supra*, 528 F.2d at 668. We believe that this is the exceptional case in which the evidence was so telling that the error must be regarded as harmless.

The indictment was based on two similar episodes. Both commenced with calls to a jeweler to order merchandise by registered mail. In both cases the caller gave a credit card name and number that was not his own. The mail carrier in both instances was unable to effect delivery and left an attempted delivery notice at the premises.[5] The notices were presented at the post office and the registered mail packages were retrieved.

---

**4.** While *Carter* and *Henry* involved improper use of a prior conviction on cross-examination, the prejudicial impact is no less when the improper reference is made in closing argument.

**5.** In one case, the address the caller gave to the jeweler, and to which the merchandise was mailed, was the residence of Coats' father; in the other, the address was at premises occupied by Coats' friend.

Appellant disclaimed any relationship to one of the notices, although it was left at his father's house and his thumbprint appears on it. He testified that he *never saw* the notice at his father's home. It was shown to him, he said, when he came to the Courthouse to provide handwriting samples. No plastic was on the notice at that time, Coats testified, and he picked it up on that occasion when the postal inspector inquired whether he had ever seen the notice before. Tr. 161, 170–71. The postal inspector testified that he did not show the notice to Coats at any time and that the notice had been in plastic since he received it, apart from the time it was in the crime laboratory being processed. In not showing Coats the notice or any other evidence, the postal inspector said he was following his routine policy. Tr. 174–78.

Appellant concedes bringing the second notice to the post office and claiming the package but asserts he did so on behalf of a friend. Although he denied signing the notice, the window clerk testified otherwise. She had been alerted to look out for a person who called for a package registered in the name of James Dooley and to inform the postal inspector, stationed behind a line of cabinets, should "Dooley" appear. The window clerk identified appellant as the man who claimed to be James Dooley and said appellant had signed the notice in that name in her presence. Tr. 135–39, 141. In exchange for the signed notice, appellant received the package. Just after his exit from the post office, he was arrested.

Our review of the transcript persuades us that no sensible jury, in face of the Government's case and the weakness of the defense,[6] would have acquitted. *See Gaither v. United States, supra.* On this basis the judgment of the District Court is

*Affirmed.*

---

6. Coats was the sole witness for the defense. He introduced only one exhibit, a diagram he

---

had drawn of the post office at which he had presented himself as James Dooley.