**Duane T. DYSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Marsden D. FERGUSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 80–1189, 81–216.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1982.

Decided Aug. 23, 1982.

---

David A. Lee, Washington, D. C., appointed by this court, for appellant Dyson.

James H. McComas, Public Defender Service, Washington, D. C., with whom William J. Mertens, Public Defender Service, Washington, D. C., was on the briefs, for appellant Ferguson.

Helen M. Bollwerk, Asst. U.' S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time of argument, John A. Terry, John R. Fisher, and William J. Bowman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, PRYOR and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellants were convicted by jury of burglary in the second degree, D.C. Code 1981, § 22–1801(b).[1] Appellant Dyson appeals his conviction on the grounds that: 1) there was insufficient evidence to support the conviction, and 2) prosecutorial misconduct prejudiced his right to a fair trial. Appellant Ferguson asserts that he is entitled to reversal by reason of prosecutorial misconduct and on several other grounds. We affirm Dyson's conviction. We conclude, however, that the prosecutor's misconduct violated Ferguson's right to a fair trial, and we therefore reverse his conviction.[2]

We will set forth the facts in some detail in view of Dyson's assertion of insufficiency of the evidence. Appellants were convicted of the burglary of a private home located at 4535 Iowa Avenue, N.W. At approximately 1:30 p.m. on October 10, 1979, William Briscoe observed at the front door of his apartment building two young black males who wore knit stocking caps. He saw them run their hands around the glass panes of the door, but did not pay close attention to their faces. He then observed them cross Iowa Avenue and go on the front porch of 4535 Iowa Avenue, a row house directly across the street from his apartment. They peered in the windows of the house and thereafter appeared to Briscoe to be examining something on the north side of the house. The men then disappeared from view. Briscoe had a neighbor call the police while he kept the house under observation. He saw no one leave the area before the police arrived.

At approximately 1:30 to 1:40 p.m. Metropolitan Police Officer Phillip Parker responded to a radio run of a burglary in progress at 4535 Iowa Avenue, N.W. Shortly after he arrived at the scene he noticed that the lattice on the north side of 4535 had been removed. Officer Parker looked under the porch and observed a head duck down under the far south side of the porch. Immediately thereafter Officer Parker and another police officer observed Ferguson in the basement stairwell of the adjoining house, 4533 Iowa Avenue. The space under the porch of 4535 provided unobstructed access to the stairwell of 4533. Ferguson's clothing was covered with dry dirt and his stocking cap contained dirt particles and paint chips.

After Ferguson came up out of the stairwell, Officer Parker noticed that the basement door of 4533 had been opened forcibly. Together with a resident of the house, he searched the basement area except for a small storage room. He found no one. Between 1:30 and 2:00 p.m., Crime Scene Search Officer Richard Hughes was photographing the area under the porch of 4533 when he observed Dyson crouching in the basement stairwell. His clothing and stock-

---

1. Dyson was acquitted of a charge of unlawful entry, D.C.Code 1981, § 22–3102 arising out of the same incident.

2. Ferguson also asserts as error the trial court's denial of his motion to suppress identification and tangible evidence, the admission at trial of testimony concerning a prior description of appellant given to police officers, and the court's refusal to limit impeachment of appellant to the fact of his prior convictions rather than permitting the nature of the convictions to be elicited. Our holding in *Hill v. United States*, D.C.App., 434 A.2d 422 (1981) is dispositive of the last-mentioned issue. In view of our holding that prosecutorial misconduct mandates reversal of appellant's conviction, we do not reach the other issues raised by appellant on this appeal.

ing cap were covered with dry dirt and cobwebs. Upon being arrested and questioned at the scene, he gave the police a false name. A pair of socks containing particles of dirt and paint was seized from his pants pocket and a pair of leather gloves was found under the porch of 4533. Officer Hughes made an in-court identification of Dyson. At the scene, Briscoe viewed appellants from a distance of approximately forty to fifty feet and made a tentative identification.

The occupant of 4535 Iowa Avenue reported that personal items had been moved within the house, but that nothing had been taken from the premises. She confirmed that the lattice outside the house had been removed, and stated that an inside door leading from the basement to the upper floors had been tampered with.

Police investigation of the crime scene revealed that the ground under the porch of 4535 was dry and dusty although the surrounding area was wet from snow which had fallen earlier in the day. The basement window under the porch was unlocked and the window frame was weathered and peeling. An analysis of paint particles found on both appellants' clothing and on the socks Dyson was carrying indicated that the paint was of a type similar to the paint peeling around the window.

At trial Ferguson presented a defense of innocent presence. He testified that on the day of the offense, he was in the 4500 block of Iowa Avenue, N.W. looking for a friend, Eric Thompson, who sometimes stayed in a basement apartment at 4531 Iowa Avenue, N.W. Appellant mistook 4533 Iowa Avenue for the house next door, 4531, which he had visited only once previously. Appellant's testimony was corroborated in part by his brother who stated that appellant had told him on the day of the offense that he was going to look for Thompson, and by Thomp-

son who testified that he sometimes stayed in the basement apartment. Thompson further testified that the row houses on the odd-numbered side of Iowa Avenue N.W. were similar in appearance.

Ferguson denied having had any dry dirt on his clothing at the time of his arrest and attributed any dirt or paint on his clothing to his wearing the clothing he wore when he worked at his usual job as a roofer. He testified that he had met Dyson ten years previously but had not seen him from that time until they were arrested. Dyson presented no defense at trial.

I

■ We address first Dyson's contention that the trial court erred in denying his motion for judgment of acquittal at the close of the government's case-in-chief. In reviewing the sufficiency of evidence presented at trial we must consider the evidence in the light most favorable to the government to determine if it was sufficient to permit reasonable jurors to find guilt beyond a reasonable doubt. *Byrd v. United States.* D.C.App., 388 A.2d 1225, 1229 (1978); *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). It is not necessary that the government's evidence compel a finding of guilt beyond a reasonable doubt, nor that the government negate every possible inference of innocence. *Chaconas v. United States,* D.C.App., 326 A.2d 792, 798 (1974). In applying the above standards, we make no distinction between direct and circumstantial evidence. *Franey v. United States,* D.C.App., 382 A.2d 1019, 1023 (1978).

■ We are satisfied that the government introduced sufficient evidence to permit the jury to find beyond a reasonable doubt that Dyson was guilty of burglary in the second degree.[3] Evidence was adduced

---

**3.** Burglary in the second degree is defined as follows:

(b) Except as provided in subsection (a) of this section, whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building or

any apartment or room, whether at the time occupied or not, or any steamboat, canalboat, vessel, or other watercraft, or railroad car or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or

that the lattice under the porch of 4535 Iowa Avenue, N.W. had been removed, that a basement window under the porch had been left unlocked and that an inner door leading from the basement to the upper portion of the house had been tampered with. Such evidence was sufficient to permit the jury to conclude that the premises had been entered forcibly, probably through the basement window. Moreover, there was circumstantial evidence from which it could be inferred that the entry was effected with the requisite specific intent to commit an offense inside the house. *See Massey v. United States*, D.C.App., 320 A.2d 296, 299 (1974). The suspicious behavior of persons peering into the windows of 4535, the manner of entry, and the fact that items had been removed from a closet inside the house, was sufficient evidence to establish that the house had been entered with the intent to steal the property of another.

Finally, there was convincing circumstantial evidence that appellant was one of the persons who burglarized the house. Dyson matched the general description of one of the men observed acting suspiciously in the area of the burglarized house. He was found shortly after the burglary, crouched in a stairwell of an adjoining house. When he was questioned, he gave a false name to the police. It was established that the area under the porch of the burglarized house was dry and dusty and provided an adult access to the stairwell where appellant was apprehended. Appellant's clothing and the socks he was carrying were covered with dry dirt and paint chips of a type of paint similar to that near the basement window by which entry to the burglarized house was gained. Such evidence was sufficient to enable the jury to infer that Dyson had entered and exited 4535 Iowa Avenue

other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree. [D.C.Code 1981, § 22–1801(b).]

4. It was the government's theory that Dyson hid in a storage room in the basement of 4533 Iowa Avenue and thus was not discovered by police when they initially arrived at the scene.

through the basement window, using socks to cover his hands, and then crawled under the porch to the adjoining basement stairwell.[4]

The facts of the instant case thus are distinguishable from those of cases in which we have held that an individual's mere presence near the scene of a crime is insufficient evidence of guilt. *See e.g. Perry v. United States*, D.C.App., 276 A.2d 719 (1971); *Davis v. United States*, D.C.App., 230 A.2d 485 (1967). We conclude that the trial court did not err in denying Dyson's motion for judgment of acquittal.

## II

■ Appellants Dyson and Ferguson both assert that the prosecutor's remarks in closing and rebuttal argument constitute prosecutorial misconduct which requires reversal of their convictions. In ruling upon appellants' assertions we must determine whether misconduct occurred and, if so, whether it created "substantial prejudice" to appellants. *See Bennett v. United States*, D.C.App., 375 A.2d 499, 504 (1977); *Garris v. United States*, D.C.App., 295 A.2d 510, 512 (1972). This test in this jurisdiction for determining if prosecutorial misconduct resulted in substantial prejudice and thus infected the verdict is the balancing test set forth in *Villacres v. United States*, D.C.App., 357 A.2d 423, 428 (1976):

The applicable test in this jurisdiction in determining whether prosecutorial misconduct infects a verdict is to balance, on the one hand, the gravity of the misconduct, its direct relationship to the issue of innocence or guilt, and the effect of specific corrective instructions by the trial court, if any, against the weight of the evidence of appellant's guilt.

Evidence that the basement door of 4533 had been opened forcibly and that a less than thorough search of the basement was made by police was offered in support of this theory. The jury, however, acquitted appellant of the charge of breaking and entering 4533 Iowa Avenue. The verdict is not inconsistent with the verdict of guilty on the burglary count.

*See also Dyson v. United States,* D.C.App., 418 A.2d 127, 132 (1980); *Smith v. United States,* D.C.App., 315 A.2d 163, 166, *cert. denied* 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974).

Both appellants cite as error the prosecutor's allegedly inflammatory appeals to the jury. Ferguson further contends that the prosecutor expressed his personal opinion concerning Ferguson's credibility, and suggested to the jury that it consider his prior burglary conviction as evidence of his propensity to commit the charged offense. We turn first to appellants' contention concerning inflammatory remarks. In his rebuttal argument, the Assistant United States Attorney stated:

> May it please the Court, ladies and gentlemen of the jury: Lay not up for yourself treasures upon this earth, where thieves break through and steal.

> Well, those words which you may recognize from the book of Matthews, [sic] would be nice, except that all of us, including [complainant], must keep our treasures on this earth with us. We must keep our treasures in our houses. But every now and then, somebody, those thieves, they do break through and steal, those burglars get in. Marsden Ferguson, Duane Dyson, they break through and try to steal our treasures. It happens.

> . . . .

> Third, and more important, isn't there something more at stake here? Isn't there something at stake? Isn't it time that we told [complainant] that the citizens of this community care. That the citizens of this community do not tolerate and cannot tolerate other people breaking into our houses. Isn't it time to show [her] that there is justice in the District of Columbia, that those who are caught and proven guilty in a fair trial are convicted.

> Isn't it time to send a message, true and clear to Duane Dyson and Marsden Ferguson that we don't tolerate burglaries.

> Burglaries are the bane of the existence of every home owner and every apartment dweller here in the District of Columbia.

> We invite you to send that message, ladies and gentlemen. We invite you to send that message because the evidence is clear, on October 10th, 1979, Duane Dyson and Marsden Ferguson together committed burglary.

The above-quoted remarks are examples of what Chief Justice Burger while a U.S. Circuit judge described as "boring irrelevancies" and "distasteful cliche-type argument." *Harris v. United States,* 131 U.S. App.D.C. 105, 108, 402 F.2d 656, 659 (1968). Prosecutors have been admonished repeatedly not to substitute such expressions for argument based upon evidence. *See Fernandez v. United States,* D.C.App., 375 A.2d 484, 486 (1977).

It is well settled that remarks calculated to arouse passion or prejudice constitute prosecutorial misconduct. *See Viereck v. United States,* 318 U.S. 236, 237–43, 63 S.Ct. 561, 561–564, 87 L.Ed. 734 (1948). Moreover, a prosecutor's inflammatory appeal to a jury may constitute misconduct central to the ultimate issue of guilt or innocence. *Reed v. United States,* D.C. App., 403 A.2d 725, 731 (1979). In determining whether prosecutorial misconduct constitutes reversible error, however, we must consider the seriousness of the misconduct. We do not believe that the statements at issue here rose to the level of serious misconduct which reasonably could be viewed as having swayed the jury. Rather, we consider that the prosecutor's remarks to the effect that "[b]urglaries are the bane of every home owner and every apartment dweller . . . ," and his references to biblical admonitions concerning treasures and thieves to be the sort of irrelevant rhetoric that the jury likely had the good sense to disregard. We have noted before that we credit juries "with enough common sense and discrimination to enable them to evaluate properly conduct and remarks of counsel even when they offend the ordinary standards of propriety." *Smith v. United*

*States, supra* at 167, quoting *Hall v. United States,* 84 U.S.App.D.C. 209, 212, 171 F.2d 347, 350 (1948).

The prosecutor's arguments quoted above are similar to those in *Reed v. United States, supra.* In *Reed* we held that the prosecutor's statements that the jury "owed" the defendant a guilty verdict because he had tried "to scratch the community of one of its most precious resources" (*i.e.,* the victim), constituted prosecutorial misconduct but did not require reversal of the conviction. The prosecutor's remarks there had come at the close of his rebuttal argument and were followed almost immediately by the court's charge to the jury that it was to decide the case solely on the evidence. In addition, the evidence against the defendant was strong.

 Similarly, the remarks at issue here came during the prosecutor's rebuttal argument and were followed by the court's instruction to the jury that it was to decide the case solely upon the evidence. As in *Reed,* the evidence against appellants was strong. We have held consistently that a determination of whether prosecutorial misconduct amounts to prejudicial error depends in good part on the relative strength of the government's case. *Smith, supra; see also Reed, supra* at 731 and cases cited therein. We conclude, therefore, that application of the balancing test enunciated in *Villacres* to the facts of the instant case does not require reversal of Dyson's conviction.[5]

### III

The situation is different, however, with respect to Ferguson's conviction, because the prosecutor's misconduct with respect to him was not limited to the remarks we have just discussed. Indeed the prosecutor's closing argument with respect to Ferguson was replete with error. Notable was the prosecutor's statement of his personal opinion that appellant had fabricated his testimony. In his initial closing argument the prosecutor stated:

> .... Don't you think [appellant] would have had an answer for that question if he were telling the truth? He wasn't, that's why he was so vague, because he made it up.

> Marsden Ferguson has that motive not to tell you the truth and Marsden Ferguson did not tell you the truth.

In his rebuttal argument, the prosecutor sat in the witness chair and mimicked appellant, stating:[6]

> We submit, ladies and gentlemen that when Marsden Ferguson takes the stand, he's got the duty to tell you the truth. Why didn't he?

> Counsel says he got up here and told you what happened. Judge that for yourself. Do you remember that, when he was asked questions. Sat right here. Every time he'd answer, he'd turn right here and give you the answer; no, I didn't, yes, I did.

> Ladies and gentlemen, did that look like a witness who'd been coached? Did that look like a person to you who'd been coached on what to say and try and make you believe all those stories. Did he look like a person who was just up there telling the truth, or did he look like a person who was giving the answers that he'd

---

5. Ferguson, but not Dyson, objected also to the following statement by the prosecutor, which was applicable to both appellants:

 > Well, thank goodness that the door going down to the basement was still locked, and thank goodness that [the occupant of the house] wasn't in any danger.

 There was no evidence that appellants threatened the personal safety of any person during the burglary and suggestions to the jury to the contrary were improper. We consider, however, that the prosecutor's single brief remark, made in his initial closing argument with respect to Dyson's alleged presence in the basement of 4533 Iowa Avenue was insufficient to mislead the jury on the issue of whether Ferguson endangered anyone's personal safety, and thus did not substantially prejudice Ferguson. Nor did it constitute plain error with respect to Dyson.

6. Ferguson stated in his brief and in oral argument that the prosecutor sat in the witness chair and mimicked him in this fashion. The government has not contested this description of counsel's behavior.

been taught to give? He had gone over it and he had been coached and coached and coached. That's Marsden Ferguson.

█ It is well settled that counsel may not express his personal opinions concerning a witness's credibility, including the defendant's. *Dyson v. United States, supra; Jenkins v. United States,* D.C.App., 374 A.2d 581, *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977); *Harris v. United States, supra; see (George) Miller v. United States,* D.C.App., 444 A.2d 13 (1982). The prejudice to an accused inherent in allowing a prosecutor to express his personal disbelief in the accused's testimony is apparent: the prosecutor in effect may present his own "unsworn and irrelevant" testimony concerning the accused's credibility:

> To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing. [*Harris v. United States, supra,* 131 U.S.App.D.C. at 107, 402 F.2d at 658 (citations omitted).]

In the instant case appellant testified on his own behalf and presented a defense of innocent presence. His testimony was not inherently incredible and in fact was corroborated in part by other witnesses. Had the jury believed appellant, it could have credited much of the government's circumstantial evidence and still acquitted him. The prosecutor's statement that appellant's testimony was fabricated and that appellant had been coached thus was particularly prejudicial. *See Dyson v. United States, supra.*

█ We are unpersuaded by the government's argument that the prosecutor's remarks were legitimate comments upon appellant's testimony and demeanor. Certainly, counsel may comment upon inconsistencies in a witness' testimony and invite the jury to draw inferences from a witness' demeanor on the witness stand. *Id.* at 130; *Hyman v. United States,* D.C. App., 342 A.2d 43, 45 (1975). Counsel also may note a witness' bias to the jury. *Cf. United States v. Hill,* 152 U.S.App.D.C. 213, 217, 470 F.2d 361, 365 (1972) (The court may instruct the jury that it may consider a defendant's interest in the outcome of the trial in evaluating his testimony). But the statements at issue here are not mere comments on the defendant's credibility or bias. They are impermissible statements of personal opinion. Following closing argument the court did instruct the jury that it was the sole judge of the witness' credibility. We do not consider the instruction sufficient to erase the effect of the prosecutor's repeated statements that appellant did not testify truthfully. We conclude, therefore, that the prosecutor's statements concerning Ferguson's credibility constituted serious misconduct which caused substantial prejudice.

### IV

█ We next address Ferguson's argument that he was substantially prejudiced by the prosecutor's remarks concerning his prior convictions.[7] We conclude that he was. The Assistant United States Attorney argued:

> ... Mr. Marsden Ferguson? Well sure, he's committed burglaries in the past and been convicted of carrying a pistol without a license, but he's learned his lesson. Do you remember that? Marsden Ferguson, he said he was on probation, and he said he was doing real well. Tell me how well is a person doing [who] is involved in a burglary—is that a person who has learned his lesson? How to be a little slicker about it, maybe take gloves and socks the next time, make up the story

7. Our review of this issue is on a plain error standard as appellant's motions in the trial court alleged only that the prosecutor's argument contained inflammatory remarks and ex-

pressions of personal opinion concerning appellant's credibility. *See Watts v. United States,* D.C.App., 362 A.2d 706, 709 (1976).

about going to visit a friend if he was caught. Figure you don't want to be caught at the site of the burglary, so you crawl next door.

... You will see they are a little small. But what about that? If you're an accomplished burglar, think about that for a minute. Are you going to take the gloves that fit like a glove or are you going to borrow your kid sister's gloves or find some gloves that are too small? ... Clear and accomplished burglar who never expected to see Mr. Briscoe. Never expected Mr. William Briscoe would call the police. Never expected the police would arrive so soon. That's what kind of burglars we're dealing with.

 It is fundamental that evidence of prior criminal acts may not be used to demonstrate a defendant's propensity to commit the offense for which he is on trial. *Harris v. United States,* D.C.App., 366 A.2d 461, 463 (1976). In consideration of the potential prejudice to a defendant from misuse of evidence of prior criminal acts, we have required that care be taken to insure that the jury is instructed concerning the limits upon the use of such evidence. *See e.g. Dixon v. United States,* D.C.App., 287 A.2d 89, 100, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972); *Lofty v. United States,* D.C.App., 277 A.2d 99, 101 (1971).

Such precautionary measures are in vain if the prosecutor is allowed to suggest to the jury that evidence of defendant's prior criminal acts may be used to infer his propensity to commit the charged offense. In *Fields v. United States,* D.C.App., 396 A.2d 522 (1978), we found plain error when the prosecutor employed a sequence of cross-examination to suggest that impeachment evidence showed a propensity to commit the offense in question. *See also Ward v. United States,* D.C.App., 386 A.2d 1180, 1183 (1978); *United States v. Carter,* 157 U.S. App.D.C. 149, 151, 482 F.2d 783 (1973). Similarly, we have held that it is error for the prosecutor to suggest misuse of the

evidence in closing argument. *Evans v. United States,* D.C.App., 392 A.2d 1015, 1026 (1978). *See also United States v. Coats,* 209 U.S.App.D.C. 205, 209, 652 F.2d 1002, 1004 (1981).

We conclude that the prosecutor's argument quoted above can be understood only as an invitation to the jury to infer that appellant, who had been convicted previously of burglary, had become an "accomplished burglar" who was now "a little slicker" as a burglar than he had been before.[8] We are not persuaded by the government's contention that the prosecutor's reference to an "accomplished" burglar was an innocent slip of the tongue, and that the prosecutor intended to state that appellant's actions were those of a "careful" burglar. The short answer to that contention is that the prosecutor stated, and the jury heard, that appellant was an "accomplished" and "slicker" burglar. Moreover, the statement followed almost immediately after the reference to appellant's prior conviction for burglary. Considering the context in which they were made, it is difficult to conclude that the prosecutor's remarks were anything other than a conscious attempt to lead the jury into considering appellant's convictions as evidence of his propensity to commit burglary.

 Nor can the prosecutor's remarks be justified as a response to what we agree was improper argument by defense counsel. Appellant had testified on direct examination that he had entered guilty pleas to two unspecified charges in the past and that he was now doing well on probation. In closing argument, Ferguson's counsel stated:

What about Mr. Ferguson? The Government says to disregard his testimony, he's been convicted of burglary I and carrying a pistol without a license. But you heard Mr. Ferguson, he entered pleas of guilty to those charges, he learned his lesson.

**8.** Appellant had one prior conviction for burglary. We accept as reasonable the government's explanation that the reference to plural burglaries was an innocent misstatement by the prosecutor.

You got a chance to see him, observe him, witness his sincerity and yes, even a little bit angry that he was arrested for a charge that he did not commit.

This was, in effect, an argument that the fact that appellant pled guilty when he was guilty meant that he was innocent here. The argument was improper. It is a legitimate defense tactic to elicit during the direct examination of a defense witness, including the defendant, the witness' prior convictions in order to lessen the potential impact of the government's use of such evidence as impeachment. *Middleton v. United States*, D.C.App., 401 A.2d 109, 125 (1979); *Kitt v. United States*, D.C.App., 379 A.2d 973 (1977). The permissible use of evidence of a prior conviction is no less limited, however, when the evidence is elicited by defense counsel than when it is elicited by the government. The evidence bears only upon credibility. Defense counsel no more may argue that evidence of a guilty plea in a prior case permits an inference of innocence in the case on trial than the government may argue that the fact of the prior conviction permits an inference of present guilt. *See Middleton v. United States, supra* at 125–26.

■ While defense counsel's argument concerning appellant's earlier guilty pleas was improper, we cannot agree that the prosecutor's statements concerning appellant's prior convictions were a justified response. The doctrine of curative admissibility of evidence is instructive regarding the limits of permissible response under such circumstances. That doctrine holds that the introduction of incompetent or irrelevant evidence by a party opens the door to admission of otherwise inadmissible evidence "only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *United States v. Winston*, 145 U.S.

App.D.C. 67, 71, 447 F.2d 1236, 1240 (1971), quoted with approval in *Middleton, supra* at 127. We apply the same test to argument.[9]

The government was not obliged to remain silent in the face of defense counsel's improper argument. Since defense counsel had made an argument concerning his client's attitude toward his previous guilty plea and his motivation for pleading guilty on that occasion, the prosecution could have responded with an argument that fairly dealt with those subjects. See our discussion of curative admissibility in *Middleton, supra* at 124–28. Instead of doing so, the prosecutor used an argument that was based on the premise that appellant had been a burglar before and, in the occurrence giving rise to the instant case, had attempted to improve upon his previous performance as a burglar. This went beyond what was necessary to cure any prejudice to the government and resulted in substantial prejudice to appellant.

■ The curative measures taken by the court were insufficient to cure the prejudice to appellant. At the close of the trial the court instructed the jury as to the limited proper use of evidence of appellant's prior convictions. While generally a jury is presumed to understand and follow the court's instructions, it has been recognized that instructions concerning the permissible use of evidence of criminal acts are of limited efficacy in situations in which the evidence has been utilized improperly. *United States v. Carter, supra,* 157 U.S.App.D.C. at 151–52, 482 F.2d at 740–41. The risk of prejudice from misuse of evidence of prior convictions is particularly great and unlikely to be obviated by curative instructions in cases in which the prior crime and the crime charged are similar. *Fields v. United States, supra* at 527. We conclude that the prosecutor's remarks suggesting misuse of evidence of appellant's prior convictions

**9.** While recognizing the broad discretion of the trial court in such matters, we have noted that the better practice would be for the court not to wait until inadmissible evidence has come in and then to permit the opposing party to introduce otherwise inadmissible evidence in rebuttal, but rather to intervene as soon as counsel strays toward the forbidden area. *Middleton v. United States, supra* at 127. Similarly, when counsel engages in improper argument the better practice would be for the court to intervene and give an immediate instruction that the jury is to ignore counsel's suggestion that it draw impermissible inferences from the evidence.

constituted plain error and that this error, too, requires that Ferguson's conviction be reversed.

 We observe finally that case law in this jurisdiction has put counsel on notice that certain types of arguments are impermissible and that counsel who practice here, including prosecutors, are expected to abide by those decisions. The failure by prosecutors to do so will result in the reversal of convictions whenever it is shown that prosecutorial excesses have created substantial prejudice and thus infected the verdict.

Appellant Dyson's conviction is affirmed. Appellant Ferguson's conviction is reversed and the case is remanded for a new trial.

*So ordered.*