James Roger THORNE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11–CF–492, 11–CF–730.

District of Columbia Court of Appeals.

Argued Oct. 11, 2012.

Decided Nov. 15, 2012.

874

Matthew August LeFande, Arlington, VA, for appellant James Roger Thorne.

Patricia A. Heffernan, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and John P. Mannarino and Kenya K. Davis, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and EASTERLY, Associate Judges, and NEWMAN, Senior Judge.

EASTERLY, Associate Judge:

James Roger Thorne appeals from his convictions for Carrying a Pistol Without a License ("CPWL") in violation of D.C.Code § 22–4504 (2009 Supp.), Possession of an Unregistered Firearm ("UF") in violation of D.C.Code § 7–2502.01 (2009 Supp.), and Unlawful Possession of Ammunition ("UA") in violation of D.C.Code § 7–2506.01 (2009 Supp.). Mr. Thorne is employed by the Alexandria Security Patrol Corporation, which secured for him two Virginia-court appointments as a "special conservator of the peace" ("SCOP"). As an SCOP, Mr. Thorne has some authority to act in a law enforcement capacity, including the power to make arrests and to carry a gun, while he is "engaged in the performance of his duties" for the Alexandria Security Patrol Corporation. Based on his status as an SCOP, Mr. Thorne argues that he is exempt from prosecution for CPWL, UF, and UA under the exception for law enforcement officers that each of these statutes contains. Alternatively, Mr. Thorne argues that, if D.C. law does not protect him, he is exempt from prosecution under the federal Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926B (2010 Supp.). Failing that, Mr. Thorne asserts that the District's CPWL, UF, and UA statutes, as applied to him, violate the Second Amendment of the United States Constitution.

We hold that the limited D.C. and federal law exemptions that permit law enforcement officers to carry weapons and ammunition in the District do not apply to Mr. Thorne based on the record he has presented to the court. Specifically, Mr. Thorne, who only possesses authority to act in a law enforcement capacity while he is working for his private employer, is not a "law enforcement officer" within the meaning of the statutory provisions on which he relies. We also reject Mr.

Thorne's as-applied constitutional challenge to his convictions for CPWL, UF, and UA; this argument was not made at trial and is subject to plain error review. Under current law, it is not plain that Mr. Thorne, in his capacity as an off-duty SCOP from the state of Virginia, has a Second Amendment right to carry a gun and ammunition in the District. Thus, we affirm.

## I. Facts and Procedural History

At the time he was arrested, Mr. Thorne was a special conservator of the peace pursuant to two appointments, from two different courts in Virginia, under Va.Code Ann. § 19.2–13. Both appointments were made upon an application by his employer, the Alexandria Security Patrol Corporation.

One appointment was from the Circuit Court for the City of Alexandria. The court's Order of Appointment gave Mr. Thorne "all the powers, functions, duties, responsibilities and authority of any other conservator of the peace when [Mr. Thorne] is engaged in the performance of duties, as a special conservator of the peace, for the [Alexandria Security Patrol Corporation] at or on the premises described in the application." The Order stated that the "powers of the special conservator of the peace appointed herein shall be exercised . . . within the territorial limits of the City of Alexandria." It further provided that Mr. Thorne was "authorized to carry a firearm while acting within the course and scope of his . . . employment and appointment as a special conservator of the peace."

A second appointment was issued by the Circuit Court of Fairfax County. In that court's Order, Mr. Thorne was similarly given:

> all the powers, functions, duties, responsibilities and authority of any other conservator of the peace when [Mr. Thorne] is engaged in the performance of duties as a special conservator of the peace as allowed by Virginia Code § 46.2–1023, for the use in services contracted by Alexandria Security Patrol only.[1]

Like the Alexandria Order, the Fairfax Order of Appointment further provided that "the powers of the special conservator of the peace appointed herein shall be exercised within the territorial limits of Fairfax County and only in connection with services provided by the [Alexandria Security Patrol Corporation]," and that Mr. Thorne "is authorized to carry a firearm while acting within the course and scope of his or her employment and appointment as a special conservator of the peace."

Turning to the criminal conduct charged, the record reflects that police approached Mr. Thorne on the street in the District on August 25, 2010, at 4:20 a.m., to see if he had any information about a recent report of gunshots. The police discovered that he was in possession of a loaded firearm. Mr. Thorne was then placed under arrest and was subsequently charged with CPWL, UF, and UA.

Following the filing of the charges, Mr. Thorne filed a motion to dismiss, arguing that he was not subject to the District's gun control laws because both D.C. and federal law exempt law enforcement officers. Mr. Thorne did not allege that, in the absence of statutory protection, he had a Second Amendment right to carry a gun.

1. Virginia Code § 46.2–1023 refers only to the use of flashing red or red and white lights on vehicles. Presumably, when referencing this section of the Virginia Code, the Fairfax Order of Appointment was describing only one aspect of Mr. Thorne's authority and not the entirety of that authority.

In support of his statutory arguments, Mr. Thorne argued that his designation as a special conservator of the peace in Virginia made him a law enforcement officer. Mr. Thorne attached his two Virginia-court appointments to his motion. As noted above, both orders limited Mr. Thorne's authority to act as an SCOP to when he was engaged in the performance of his duties. Mr. Thorne presented no evidence regarding the scope of his duties for the Alexandria Security Patrol Corporation— his work hours, work obligations, work locations, etc.—much less any evidence indicating that his law enforcement authority as an SCOP exceeded his work hours. Mr. Thorne also did not present any evidence about the Alexandria Security Patrol Corporation, such as what services it had contracted to provide or with whom it held contracts.

The trial judge ruled that Mr. Thorne was not a law enforcement officer under D.C. or federal law and denied his motion to dismiss. Mr. Thorne then waived his right to a trial by jury, and agreed to a trial based on stipulated facts. In those facts, Mr. Thorne acknowledged that, at the time of his arrest, he was not on duty for his employer and was not traveling directly home from his job in Virginia to his home in Maryland. The trial judge found Mr. Thorne guilty of all three charged offenses.

## II. D.C.Code Provisions

Mr. Thorne had the burden in Superior Court to establish facts sufficient to bring himself within one of the provisions exempting law enforcement officers from prosecution for CPWL, UF, and UA. *See Bsharah v. United States*, 646 A.2d 993,

998 (D.C.1994) ("When a defendant relies on a statutory exception as an affirmative defense to a criminal charge, the burden is on the defendant to bring himself or herself within the exception." (citing *Middleton v. United States*, 305 A.2d 259, 261 (D.C.1973))). Based on the record he developed, we review *de novo* whether he was entitled to the protection of the various statutory exemptions. *See McNeely v. United States*, 874 A.2d 371, 387 (D.C. 2005). Mr. Thorne argued this case as if there were one uniform exemption for law enforcement officers in the CPWL, UF, and UA statutes. The government distinguished the exemption to the UA provision, arguing that it was more narrow than the others, but did not differentiate between the exemptions to CPWL and UF. Each exemption is worded differently, however.[2] Although, in the end, we conclude that the reference in each to "law enforcement officers" excludes Mr. Thorne, we must analyze the language of each exemption separately.

### A. Carrying a Pistol Without a License

■ We begin our analysis with the CPWL charge. D.C.Code § 22–4504 states: "No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law." The Code then exempts a number of officials from this broad prohibition, most relevant to this case: "marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law enforcement officers." D.C.Code § 22–4505. The term "law enforcement officer" is not defined.[3]

2. We note that the CPWL statute was written by Congress in 1932, before home rule, whereas the UF and UA exemptions were part

of comprehensive gun control legislation written by the Council in 1976.

3. The CPWL statute also does not state whether it applies to law enforcement officers

Mr. Thorne argues that his status as a special conservator of the peace in the City of Alexandria and Fairfax County makes him a law enforcement officer for purposes of this statute. We disagree.

■ "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64–65 (D.C.1980) (citing *United States .v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). We first look to see if the statutory language "is plain and admits of no more than one meaning"; we must construe the words in a statute "according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States,* 397 A.2d 951, 956 (D.C. 1979). In addition to these general rules of statutory construction, we have said that exemptions to the CPWL statute must be " 'narrowly circumscribed ... given the clear intent of Congress' " to strictly regulate guns in the District. *Bsharah,* 646 A.2d at 998 (D.C.1994) (quoting *Logan v. United States,* 402 A.2d 822, 826 (D.C. 1979)); *see also Cooke v. United States,* 275 F.2d 887, 889 (D.C.Cir.1960) (noting Congress's "clearest intent to drastically tighten the ban on dangerous weapons").[4] Looking to the ordinary, plain meaning of the term against the backdrop of acknowledged Congressional intent, Mr. Thorne,

as an SCOP, is not a law enforcement officer.

■ As discussed in our case law, the ordinary understanding of policemen and law enforcement officers is that these terms describe professionals with "general duties and broad authority." *Franklin v. United States,* 271 A.2d 784, 785 (D.C. 1970); *see also Klopfer v. District of Columbia,* 25 App.D.C. 41, 44 (D.C.Cir.1905) (distinguishing "a special policeman for a special purpose" as someone "not subject to the performance of the general duties of a policeman, in the ordinary sense of that term"). Those general duties include the authority to carry a firearm at all times, *see Bsharah,* 646 A.2d at 999 (distinguishing between policemen, who are authorized to carry guns at all times, and special police officers, "who are authorized to carry firearms only when they are on duty"), and the authority to make arrests even when they are off duty, *see Bauldock v. Davco Food, Inc.,* 622 A.2d 28, 34 (D.C. 1993) (recognizing that an off-duty police officer retains his authority to make arrests from his status as a Metropolitan Police Department officer). In fact, when they are in the District, MPD officers are required to "tak[e] proper police action in any matter coming to their attention requiring that action," even when they are technically off-duty. *Smallwood v. District of Columbia Metro. Police Dep't,* 956 A.2d 705, 708 (D.C.2008) (quoting 6A

from other states. *Compare* D.C.Code § 22–4505, *with* D.C.Code § 7–2502.01 (exempting "any law enforcement officer or agent of the government of any state or subdivision thereof"). This ambiguity was not discussed in the briefs to this court, although at oral argument Mr. Thorne asserted that the reference to sheriffs implied that the statute was meant to encompass out-of-state officers because the District does not have sheriffs. We need not resolve whether the CPWL exemption extends to out-of-state law enforcement officers, because we determine Mr. Thorne is not a po-

lice officer or other duly appointed law enforcement officer.

4. We recognize that *Bsharah* was decided before *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), a watershed case that established an individual right to have a gun within the home. However, nothing in *Heller* undermines the general rule, restated in *Bsharah,* that exemptions to the District's gun laws should be interpreted narrowly in light of Congress's intent to strictly regulate guns.

DCMR § 200.4 (1972)); *see also* D.C.Code § 5–115.03 (2001) ("If any member of the police force shall neglect making any arrest for an offense against the laws of the United States committed in his presence, he shall be deemed guilty of a misdemeanor.").[5]

Mr. Thorne is not a policeman or other duly appointed law enforcement officer under the ordinary sense of those terms because, outside of specific times when he is working, he does not have general police authority or authorization to carry a gun. His Order of Appointment from the City of Alexandria limits his authority as a conservator of the peace to times when he "is engaged in the performance of duties ... at or on the premises described in the application." Similarly, his Order of Appointment from Fairfax County limits his authority to times when he "is engaged in the performance of duties ... for the use in services contracted by Alexandria Security Patrol only." In addition, both orders specifically limit his ability to carry a firearm to times when he is on duty. Mr. Thorne never presented evidence regarding the scope of his work hours for the Alexandria Security Patrol Corporation, but we can infer from the language of his two appointments that he was not expected to be on duty twenty-four hours per day, seven days a week, otherwise there would be no reason to include language limiting his authority as an SCOP to times when he was "engaged in the performance of his duties." [6]

Even though our statutes and precedent are clear that policemen and law enforcement officers are those with general law enforcement authority and responsibility, we have also recognized that certain professionals who are given police powers "while on duty and in [their] prescribed area of authority, must of necessity possess certain powers that are accorded to policemen." *Franklin,* 271 A.2d at 785. Accordingly, we have read into the section 22–4505 exemption for "policemen and other duly appointed law enforcement officials" a narrow exemption for professionals with temporally limited law enforcement authority, so long as they are acting within the scope of their duties. *See Shivers v. United States,* 533 A.2d 258, 260 (D.C. 1987) ("Appellant established that he is a special police officer.... He is thus entitled to carry a pistol without a license under the exception ... but 'only to the extent that he acts in conformance with the regulations governing special officers.' " (citing *Timus v. United States,* 406 A.2d 1269, 1272 (D.C.1979))); *see also Singleton v. United States,* 225 A.2d 315, 316 (D.C.1967) (" '[S]pecial policemen are public officers when performing their public duties.' " (quoting *Nat'l Labor Relations Bd. v. Jones & Laughlin Steel Corp.,* 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947))).

Mr. Thorne does not fall under the additional, narrow exception for individuals with limited law enforcement authority because he was not acting within the scope of his employment when he was arrested.

---

5. The general rule that Metropolitan Police Department officers are always on duty does not apply when the officer is outside of the jurisdiction. *Rife v. District of Columbia Police & Firefighters' Ret. & Relief Bd.,* 940 A.2d 964, 965 (D.C.2007). But at least when MPD officers are in the District, they have temporally unbounded police authority and responsibility.

6. Mr. Thorne argues that he had broad geographic authority throughout the City of Alexandria and Fairfax County. However, even if we accept Mr. Thorne's argument that his authority extends throughout Alexandria and Fairfax, the orders of appointment are unambiguous that his police authority and ability to carry a firearm are confined to the times when he is on duty.

Mr. Thorne stipulated that he was not on duty for the Alexandria Security Patrol Corporation at the time of his arrest. Additionally, he stipulated that he was not traveling to or from work when he was arrested. In other words, he had no work-related reason to be carrying a gun at the time of his arrest. Because Mr. Thorne is neither a law enforcement officer with general authority nor an individual with limited law enforcement authority who is acting within the scope of his authority, he is not considered a law enforcement officer for purposes of D.C.Code § 22–4505.

Although D.C. law and our interpretation thereof controls the question before us—*i.e.*, who is "a law enforcement officer" within the meaning of the D.C.Code—it is worth noting that Mr. Thorne does not appear to be a law enforcement officer in the eyes of Virginia either. Unlike the D.C.Code, Virginia law defines the term "law enforcement officer" as "any full-time or part-time employee of a police department or sheriff's office which is a part of or administered by the Commonwealth or any political subdivision thereof, and who is responsible for the prevention and detection of crime and the enforcement of the penal, traffic or highway laws of the Commonwealth." Va.Code Ann. § 9.1–101 (2012). Mr. Thorne stipulated that he was employed by the Alexandria Security Patrol Corporation, and his orders of appointment were tied to his employment with this entity (which, given its name, appears to be a private company).

In addition, Virginia law itself distinguishes between law enforcement officers and special conservators of the peace. Virginia permits its circuit courts to grant to special conservators of the peace "all the powers, functions, duties, responsibilities and authority of any other conservator of the peace" but only "within such geographical limitations as the court may deem appropriate" and "whenever such special conservator of the peace is engaged in the performance of his duties as such." Va.Code Ann. § 19.2–13 (2008). The statute further authorizes courts, in an order of appointment, to "provide that the special conservator of the peace is a 'law-enforcement officer' for the purposes of Article 4 (§ 37.2–808 et seq.) of Chapter 8 of Title 37.2 [addressing emergency custody and involuntary detention of a person with a mental illness], or Article 16 (§ 16.1–335 et seq.) of Chapter 11 of Title 16.1 [addressing the psychiatric treatment of minors]"—thus indicating that, absent such designation in the order of appointment, an SCOP is not considered a law enforcement officer for any purpose.

Lastly, Virginia has different standards for law enforcement officers and special conservators of the peace with respect to its gun laws. The Virginia Code exempts "[a]ny law-enforcement officer, wherever such law-enforcement officer may travel in the Commonwealth," but only exempts conservators of the peace "while in the discharge of their official duties, or while in transit to or from such duties." Va. Code Ann. § 18.2–308.

We reiterate that Virginia's definition of law enforcement officer is not dispositive of the question before us, but if Mr. Thorne is not a law enforcement officer under Virginia law, we see no reason to make him a law enforcement officer for the purposes of the District of Columbia's gun control laws.

## B. Unregistered Firearm

We next turn to Mr. Thorne's conviction under D.C.Code § 7–2502.01, which states in relevant part: "no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm." Like the CPWL

statute, the UF statute contains a law enforcement exemption, although its wording is different. The statute exempts:

> Any law enforcement officer or agent of the District or the United States, or any law enforcement officer or agent of the government of any state or subdivision thereof, or any member of the armed forces of the United States, the National Guard or organized reserves, when such officer, agent, or member is authorized to possess such a firearm or device while on duty in the performance of official authorized functions.

D.C.Code § 7–2502.01(b)(1). Without question, this provision exempts law enforcement officers from other states. However, by its terms it still only applies to law enforcement officers or agents. As discussed, *supra*, Mr. Thorne is not a law enforcement officer or agent (1) under the ordinary understanding of those terms, (2) under the narrow exemption this court has recognized for professionals accorded limited law enforcement authority, or (3) even in the jurisdiction in which he works. Therefore, Mr. Thorne is not entitled to the exemption under D.C.Code § 7–2502.01(b)(1).[7]

### C. Unlawful Possession of Ammunition

■ Lastly, we turn to Mr. Thorne's conviction for unlawful possession of ammunition under D.C.Code § 7–2506.01, which states: "[n]o person shall possess ammunition in the District of Columbia" subject to a few exemptions. Specifically, like CPWL and UF, UA has its own distinct law enforcement exemption for "an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition." D.C.Code § 7–2506.01(a)(2). Though this provision seems to apply only to officers of the District of Columbia and the United States—and therefore not to officers of other states—we decline, as we did with the CPWL exemption, to determine whether officers from other states are foreclosed from its protection. The statute applies only to an officer who is "on duty and acting within the scope of his duties." Again, because Mr. Thorne's Orders of Appointment coupled with his admission establishes that he was not on duty or acting within the scope of his duties at the time of his arrest, he plainly does not qualify for this exemption.

### III. Law Enforcement Officers Safety Act

■ Mr. Thorne argues that, even if he is not exempt from prosecution for CPWL, UF, and UA under the D.C.Code, he is exempt under the federal Law Enforcement Officers Safety Act (LEOSA). As with the D.C.Code provisions, we review this question of statutory interpretation *de novo*. See *McNeely*, 874 A.2d at 387. LEOSA says, "an individual who is a qualified law enforcement officer and who is carrying the identification required ... may carry a concealed firearm." 18 U.S.C. § 926B. "Qualified law enforcement officer" is defined in turn, as "an employee of a governmental agency" who meets a number of other requirements. 18 U.S.C.

---

7. In *Timus v. United States*, 406 A.2d 1269 (D.C.1979), this court made the logical point that D.C. special police officers who are issued firearms by the District and are required to take the firearms home, but who cannot register the gun because the District has the registration certificate, should not be prosecuted for possessing an unregistered firearm. Although Mr. Thorne cited *Timus* in his brief, he did not argue that, under *Timus,* he was exempt from the UF provision. We decline to *sua sponte* extend the holding of *Timus* beyond the facts of that case.

§ 926B (c).[8] As discussed, *supra,* "[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis,* 397 A.2d at 956 (citations omitted). The "ordinary sense" of "governmental agency" is an agency that is a component of the government.

The parties stipulated that Mr. Thorne was an employee of the Alexandria Security Patrol Corporation. Although no information about the Alexandria Security Patrol Corporation was presented to the trial court, the word "corporation" in its name seems to imply that Mr. Thorne is employed by a private business entity, not a branch of the government.[9] Certainly, there was no evidence before the trial court that the Alexandria Security Patrol Corporation was a component of the Virginia State government or the local Alexandria or Fairfax governments. Because Mr. Thorne did not demonstrate that he is an employee of a governmental agency, he is not entitled to the protection of LEOSA. *See Bsharah,* 646 A.2d at 998.

Mr. Thorne nevertheless argues that we should consider Alexandria Security Patrol Corporation to be a governmental agency under LEOSA for three reasons. None have merit. First, Mr. Thorne argues that the Alexandria Security Patrol Corporation was a governmental agency because it was a "criminal justice agency" as defined by Va.Code Ann. § 9.1–101. Mr. Thorne misreads this statute. When defining criminal justice agency, this section expressly distinguishes between private corporations and government agencies and states that a private corporation employing special conservators of the peace is a criminal justice agency only for the limited purpose of another section of the Virginia Code covering Virginia's criminal record system. *Id.* Second, Mr. Thorne makes an argument sounding in principles of agency law: that because the Alexandria Security Patrol Corporation is acting as an agent of the government when its employees are protecting property and preserving the peace, the corporation should be considered a governmental agency. But Mr. Thorne does not point to any authority in support of the proposition that, contrary to its ordinary meaning, the statute is referencing agency law when it says "governmental agency." Finally, Mr. Thorne points to a case from New York State, in which the Supreme Court (*i.e.,* the trial court) ruled that an elected Pennsylvania constable who functioned as an "independent contractor" but nonetheless was paid directly by the government, was entitled to LEOSA's protection. *See New York v. Rodriguez,* N.Y. Sup.Ct., N.Y. County, Nov. 3, 2006, Zweibel, J., indictment No.

---

8. Those requirements, which we do not need to discuss here, are:
 (1) is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has *statutory powers of arrest*;
 (2) is authorized by the agency to carry a firearm;
 (3) is not the subject of any disciplinary action by the agency which could result in suspension or loss of police powers;
 (4) meets standards, if any, established by the agency which require the employee to regularly qualify in the use of a firearm;
 (5) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and
 (6) is not prohibited by Federal law from receiving a firearm.
 18 U.S.C. § 926B (c).

9. Mr. Thorne seems to agree with this interpretation: when arguing that his employer was a criminal justice agency under Virginia law, see *infra,* he emphasized the portion of the statute referring to private corporations.

06–2917. This case is factually distinguishable and unpersuasive.

## IV. Second Amendment

 In the absence of any statutory protection from prosecution, Mr. Thorne argues that D.C.'s gun control laws, as applied to him as a special conservator of the peace who is permitted to carry a firearm while on duty, violate his rights under the Second Amendment. U.S. Const. amend. II. Because Mr. Thorne "failed to preserve this issue in the trial court, we review only for plain error." [10] *Mack v. United States*, 6 A.3d 1224, 1234 (D.C.2010). A plain error is one that is "clear" or "obvious." *Id.* at 1235. Put another way, an error is plain if "the error was 'so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.'" *Thomas v. United States*, 914 A.2d 1, 20 (D.C.2006) (quoting *United States v. Gore*, 154 F.3d 34, 43 (2d Cir. 1998)). Though we generally look to the law at the time of trial to see if the error was plain, "'where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[, ]it is enough that an error be 'plain' at the time of appellate consideration.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

Mr. Thorne has not shown a "clear" or "obvious" violation of the Second Amendment, either at the time of trial or at the time of his appeal. In *Heller*, the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment." *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. As this court has noted, the Supreme Court limited its holding to possession of a firearm within the home and "did not attempt to define the 'full scope' of this right." *Gamble v. United States*, 30 A.3d 161, 163 (D.C.2011) (quoting *Heller*, 554 U.S. at 626, 128 S.Ct. 2783). Rather the Supreme Court noted that certain prohibitions were "presumptively lawful." *Heller*, 554 U.S. at 627 n. 26, 128 S.Ct. 2783 (noting also that "our list [of presumptively lawful regulations] does not purport to be exhaustive."); *see also Little v. United States*, 989 A.2d 1096, 1101 (D.C.2010) (no clear Second Amendment right post *Heller* to carry a gun outside the home). Accordingly, *Heller* and the cases that followed in this court have not defined any clear right to carry a firearm outside the home.[11] Because Mr. Thorne cannot show plain error, his constitutional argument must fail.

For the foregoing reasons, we affirm.

*So ordered.*

─────

10. Mr. Thorne argues that his failure to make a constitutional argument in Superior Court should be excused because his Second Amendment claim did not arise until after the Superior Court judge ruled that he was not exempt from prosecution under D.C. or federal law. This argument has no merit. Mr. Thorne's Second Amendment rights, such as they are, are constant.

11. Mr. Thorne particularly relies on the D.C. Circuit's opinion in *Heller v. District of Columbia*, 670 F.3d 1244 (D.C.Cir.2011). This post-*Heller* challenge of the District's emergency gun legislation does not help Mr. Thorne, however, because it did not address, much less clearly establish, that regulation of the possession of a weapon outside of the home is unconstitutional.